UNITED STATES of America, ex rel. Rayford SMITH

v.

William ROBINSON et al.

Civ. A. No. 79–4451.

United States District Court, E. D. Pennsylvania.

July 31, 1980.

Victor A. Young, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for plaintiff.

John T. Kalita, Jr., Philadelphia, Pa., Deputy Atty. Gen. of the Comm. of Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

In this prisoner's civil rights action defendants Robinson and Cuyler have moved to dismiss the complaint; defendant Spaid has moved for summary judgment. Defendant William B. Robinson was Commissioner of the Bureau of Correction during the time the alleged events took place. Defendant Julius T. Cuyler is and was at all relevant times Superintendent of the State Correctional Institution at Graterford (SCIG). Defendant Spaid is and was at all times relevant to this case a staff member at SCIG, employed in the capacity of Major of the Guards.

On November 9, 1979 plaintiff's cell was routinely searched by SCIG personnel. The correctional officer who conducted the search found a number of items he deemed

contraband.[1] In accordance with correctional institution procedures, 37 Pa.Code § 95.103 [hereinafter cited by section only], plaintiff was immediately given a copy of the misconduct report and a hearing was held on November 13, 1979 within six days of the notice of the misconduct. Defendant Spaid chaired the committee hearing, which found Smith guilty of possession of contraband and ordered him placed in segregation on B Gallery for sixty days.

On or about November 28, 1979 plaintiff filed a *pro se* complaint, inartfully but urgently pleading his cause. Although rambling and somewhat confused, the complaint and Statement of Appeals, Plaintiff's Exhibit A–1, alleges that the disciplinary committee conducted a virtual farce of a hearing, concluding as it did that plaintiff should be placed in segregation for two months for possession of items that were deemed "inherently dangerous to the safety and security of the inmates and staff at SCIG." Spaid Affidavit ¶ 2, Exhibit D.

## I

A 42 U.S.C. § 1983 claim requires a factual averment that shows some personal involvement by the defendants. *Fialkowski v. Shapp*, 405 F.Supp. 946 (E.D.Pa.1975) (Huyett, J.). In their 12(b)(6) motion to dismiss, defendants Robinson and Cuyler assert that, "No acts or failure to act has [sic] been alleged to have been performed or failed to be performed by defendants Robinson and Cuyler." Defendants note that they are mentioned only in the complaint's caption and argue that no claim has been stated upon which relief can be granted.

## A

Plaintiff filed a *pro se* complaint in late November 1979, which was docketed December 17, 1979 after his *in forma pauperis* petition was reviewed by Magistrate Powers. In late January, 1980 by my order an attorney was appointed to represent plaintiff; a month later that appointment was revoked and another attorney appointed. Defendants' motions were filed between these appointments. Plaintiff's second attorney thus had as an immediate duty the drafting of a response to the motions. As this review makes clear, all papers are based on plaintiff's *pro se* complaint.

Pro se civil rights complaints are to be liberally construed, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and, concomitantly, motions to dismiss prisoners' civil rights actions for failure to state a claim are subject to a very strict standard of review. *United States ex rel. Tyrrell v. Speaker*, 471 F.2d 1197, 1200–01 (3d Cir. 1973). It must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Haines v. Kerner*, 404 U.S. at 521, 92 S.Ct. at 596. Insofar as nothing in plaintiff's complaint gives rise to even an inference of involvement in the allegedly unconstitutional conduct by defendant Robinson, I grant the motion to dismiss with prejudice as to him. With regard to Superintendent Cuyler, a different analysis is appropriate.

## B

Plaintiff cannot prove liability on defendant Cuyler's part on a *respondeat superior* theory. *See, e. g., Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976); *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Adams v. Pate*, 445 F.2d 105 (7th Cir. 1971). In this circuit knowledge of and acquiescence in the acts attacked can satisfy the requirement of personal involvement. *Hampton*, 546 F.2d at 1082; *Santiago v. City of Philadelphia*, 435 F.Supp. 136, 151 (E.D.Pa.1977) (Lord, C. J.); *Fialkowski, supra; Downs v. Department of Public Welfare*, 368 F.Supp. 454 (E.D.Pa.1963) (Green, J.). In a more

---

**1.** The Confiscated Items Receipt lists the following: 18 packs of chewing gum, five playing dice, one spool of sewing thread, one Stanley ruler, approximately 30 nails, approximately 50 brown bags, 500 football pools, one "liberty five-cent" piece, one screwdriver, one t.v. set. Spaid Exhibit B.

recent case a district court in Pennsylvania held, "A Warden of a prison is clearly responsible for the implementation of a prison policy notwithstanding the fact that subordinates are directed to carry the policy out." *Hooker v. Arnold*, 454 F.Supp. 527, 529 (M.D.Pa.1978).

■ In this case plaintiff has not stated his claim against defendant Cuyler with the requisite specificity. He has alleged, however, infringement of his constitutional rights by violation of regulations governing administrative procedures at SCIG. These regulations provide for direct participation and review by the Superintendent, and thereby preclude dismissal on pretrial motion by the Superintendent. Plaintiff, of course, will be held to his burden of proof at trial to adduce evidence to show liability on the part of defendant Cuyler.

The plaintiff is granted leave to amend the complaint to assert properly a claim against defendant Cuyler.

## C

With regard to the relief requested, in his complaint the plaintiff asks for release from solitary confinement, an issue mooted by his return to A gallery on January 11, 1980. Spaid Exhibit C, Hearing Committee Action. However, "alleviation of an alleged constitutional violation does not moot a prisoner's claim for actual and punitive damages." *United States of America ex rel. Jones v. Rundle*, 453 F.2d 147, 150 (3d Cir. 1971). Plaintiff also alleged that Major Spaid had no authority to sentence him for a misconduct and therefore demanded Spaid's removal from the Hearing Committee. The regulations explicitly provide for the Major or Captain of the Guard to be the permanent member and chairperson of the Committee. Section 95.103(c). Thus this request for relief is without merit. Plaintiff also expressed a fear of reprisals by the SCIG administration for his filing of this complaint and asked for protection by the court from any retaliatory action such as a transfer. Finally, plaintiff requested that the "above defendant's [*sic*] stand Judgment." A more specific request for damage

and injunctive relief is necessary to support a complaint. To avoid any prejudice to the plaintiff, however, resulting from the change of attorneys appointed to represent him, plaintiff is permitted to amend his complaint to state with particularity the relief requested.

## II

Defendant Spaid has moved for summary judgment on two grounds: first, since plaintiff was accorded all that due process requires in the determination of the misconduct and the discipline imposed therefor, no infringement of constitutional rights occurred and no genuine issue of material fact exists; second, defendant Spaid is free from liability on the basis of a qualified immunity.

Summary judgment is granted under Rule 56(c) of the Federal Rules of Civil Procedure only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The movant must demonstrate the absence of a genuine issue, and the party opposing the motion is given the benefit of all inferences.

Plaintiff and defendant agree on the chronology of events, the description of the cell search, the items confiscated and the hearing procedure. The parties disagree on whether the hearing procedure comported with due process and whether the two-month sentence was excessive. I understand the plaintiff to allege that with the exception of the "liberty five-cent piece," the items confiscated were not contraband. Plaintiff's Exhibit A–1. The Hearing Committee, on the other hand, accepted the report of the confiscating officer that the items *were* contraband and imposed sanctions accordingly. If this difference raises a genuine issue of material fact, defendant

is not entitled to summary judgment as a matter of law.

### A

A threshold question is whether plaintiff has asserted infringement of an interest protectable under the fourteenth amendment due process clause. Imprisonment necessitates a loss of some rights and diminution of others. The Supreme Court has rejected, however, the notion that "the interest of prisoners in disciplinary procedures is not included in that 'liberty' protected by the Fourteenth Amendment." *Wolff v. McDonnell*, 418 U.S. 539, 556–57, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Even if the Constitution itself is not the source of the substantive right, a liberty interest can be asserted when a state creates a right by statute, *id.* at 558, 94 S.Ct. at 2975, or by official policy or practice, *Winsett v. McGinnes*, 617 F.2d 996, 1005–06 (3d Cir. 1980).

Although prison disciplinary procedures need not encompass the "full panoply of rights due a defendant" in a criminal prosecution, *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975, an inmate has a constitutional right under the due process clause to freedom from disciplinary sanction until proven guilty of an infraction. Indeed the Correctional Institution regulations themselves provide for a committee hearing to determine guilt before disciplinary sanctions will be imposed for a misconduct. Section 95.-103(e). In standard due process analysis, once a liberty or property interest has been defined, a court must determine what process is due. In this case the process due is defined by the burden of proof necessary to determine guilt.

The Department of Correction has promulgated regulations pursuant to statu-tory authority [2] that specify the procedures for disciplining inmates for misconducts. Section 95.103. The regulations incorporate requirements the Supreme Court has held due process mandates, as well as providing for others as yet unsecured by court decision. The subsection under which the plaintiff's due process claim must be assessed requires that, "A Committee decision shall be based upon a preponderance of the evidence. Before action other than dismissal of the charges is taken, the Committee must be satisfied that, more likely than not, the inmate has committed a misconduct." Section 95.103(e)(8). Thus in this case the process due is determined by the regulation itself that sets forth the evidentiary burden necessary to be met before sanctions will be imposed. Violation of this regulation by the SCIG Hearing Committee would be a denial of the "liberty" guarantee of the fourteenth amendment. *See Winsett*, 617 F.2d at 1005–07. *Cf. United States of America ex rel. Hoss v. Cuyler*, 452 F.Supp. 256, 292 n.19 (E.D.Pa.1978) (Luongo, J.) (violation of regulation that requires weekly review of status of inmates in segregated housing does not give rise to a constitutional violation).

### B

At the November 13, 1979 hearing, the charges were read to the plaintiff, Spaid Affidavit, Exhibit D, ¶ 4, presumably from the misconduct report submitted with the Hearing Committee Action report, Spaid Exhibit C. The misconduct report listed "items of contraband" that were "found and confiscated" by the Reporting Correctional Officer. Although the report states that the items were contraband, this appears to be as much an assumption as a conclusion, since no definition of contraband was offered. That items were in

---

2. 71 P.S. § 306, which reads in pertinent part:

The boards of trustees of each State institution within the Department of Justice and the Commissioner of Correction shall have general direction and control of the property and management of such institutions. To-gether they shall have the power and their duty shall be:

. . .

(d) Subject to the approval of the Department of Justice, to make such bylaws, rules

plaintiff's cell is not, without more, evidence of their contraband nature.[3]

At the hearing the plaintiff presented two inmate witnesses in addition to his own testimony to explain the presence of the various items found in his cell. Spaid Exhibit D ¶ 3; Plaintiff's Affidavit (document # 12, filed March 27, 1980). With the exception of the liberty nickel, plaintiff denied that the items were contraband and offered his witnesses' testimony in support thereof.

Inmate John Fair testified that the screwdriver was his and that he forgot to remove it when working on plaintiff's television set. Inmate Charles Gillis testified he had received the chewing gum and exchanged it for cigarettes from plaintiff. Plaintiff testified that (a) he was given the Stanley ruler to paint the tier, (b) an officer in the carpentry shop gave him the nails so that he could repair his footlocker, (c) the dice were from games legitimately sent to him through the mail, (d) he found the thread in a cell he had cleaned out, (e) he found the nickel, (f) the television was from another inmate for cigarettes the latter owed him, (g) he had made the bags and the newspaper pools. It should be noted that most of the items found in plaintiff's cell are for sale to inmates according to the Approved Commissary Lists, § 95.95. Defendant argues in his memorandum in support of his motion for summary judgment that plaintiff could have been charged with a criminal offense for the possession of the pool tickets. Mere possession, however, does not establish intent to sell, which is an element of the offense. *Commonwealth v. Rose*, 257 Pa.Super. 514, 390 A.2d 1356 (1978). "Loaning or borrowing property except legal material" (arguably the television set, screwdriver and ruler), is a Class Two Misconduct, § 95.102a(c)(6), punishable

in ways enumerated in § 95.103(f) with the specific exclusion of placement in Disciplinary Custody. Thus, according to plaintiff, the only item in his cell for which he cannot properly account is the nickel. *See discussion infra.*

At the conclusion of the hearing the Committee issued a report stating that "the staff finds Mr. Smith guilty of possession of contraband listed on Confiscation Receipt No. 002422 and awards him 60 days in B gallery." Spaid Exhibit C. In defendant's affidavit he states, "Upon the evidence submitted at the hearing and relying solely thereon, the Hearing Committee decided that plaintiff was guilty upon an overwhelming preponderance of the evidence." Spaid Exhibit D ¶ 5. Rejection of plaintiff's and his witnesses' testimony does not constitute affirmative proof of the presence of the contraband. Thus had the Committee disbelieved the plaintiff and the witnesses, it would still be required to base its conclusion on a finding that it was more likely than not that the items were contraband. The only evidence submitted and "rel[ied] solely thereon" was the misconduct report that in conclusory fashion deemed the items contraband. For the purposes of this discussion I assume that in the prison context contraband has at least two possible meanings: first, the possession of an item, *e. g.*, "spiritous or fermented liquor," that in and of itself is illegal to possess; second, the unapproved and therefore illegal possession of an item, *e. g.*, a television set, that under some circumstances would be legal to possess. *See* note 3 Supra. Without any definitional refinement by the defendant, however, the question of whether the items in plaintiff's possession were contraband, which possession therefore constituted a misconduct, cannot be resolved in defendant's favor as a matter of law. If the

and regulations for the management of the institution.

**3.** Nowhere in any of the papers of the defendant or the plaintiff is contraband defined. There are only two references to contraband in the statutes and regulations. One is at 18 Pa. C.S. § 5123, which speaks to the giving or furnishing of money directly to an inmate, and

to the selling, giving or furnishing to an inmate of "any kind of spirituous or fermented liquor, drug, medicine, poison, opium, morphine, or other kind of narcotics . . . without a written permit. . . ." The other reference is in the code regulations, § 95.102a(b)(3) which classifies possession of or introduction of contraband as a Class One misconduct.

misconduct report cannot satisfy the evidentiary burden under the regulations, plaintiff has been denied due process.

### C

Plaintiff alleges in his complaint and supporting papers that the defendants abused their discretion by imposing a two-month period of solitary confinement for a minor misconduct, possession of a liberty five-cent piece. I do not understand plaintiff to assert that a two-month placement in disciplinary custody for a *de minimis* infraction constitutes cruel and unusual punishment. Although plaintiff might be able to distinguish his case from *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (Court rejected constitutional attack on Texas statutory scheme that permitted imposition of life sentence for commission of non-violent offenses totalling less than $230), his claim is more appropriately analyzed in light of Supreme Court precedent defining the extent and limits of administrators' discretion in managing prison institutions. *E. g., Wolff v. McDonnell, supra; Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

█ Although great deference is due the decisions of prison administrators, their actions and policies, as noted above, are clearly not beyond review. The threshold question as in the earlier analysis of the SCIG hearing procedure is whether the plaintiff has alleged infringement of an interest protected by the fourteenth amendment due process clause. In *Winsett,* the Court of Appeals examined the impact of Delaware prison regulations on administrators' exercise of discretion and found that the existence of discretionary authority did not negate "a state-created entitlement . . . because we do not view the prison authorities' discretion as absolute." 617 F.2d at 1006.

█ Similarly in this case, the regulations governing the operation of Pennsylvania Correctional Institutions establish the perimeters of an administrator's discretion. Section 95.101, titled "Scope and purpose" sets forth the policy that promulgated standards of conduct are designed "to promote correctional objectives and to maintain the general welfare." Punishment for deviation therefrom "shall be imposed only when necessary and *in the degree necessary* to regulate the unacceptable behavior" (emphasis added). In § 95.103(g)(4), the regulations provide that in reviewing an inmate's status when housed in Disciplinary Custody, "the gravity of the misconduct must also be considered." Section 95.107, titled "Care and treatment" defines the differences between Administrative and Disciplinary Custody Housing, and specifies that the purpose of placement in the latter "shall be to supervise and control serious disciplinary problems." In light of these limits on the exercise of discretionary authority, I find that plaintiff has a liberty interest in freedom from arbitrary placement in segregated housing units. In like fashion it has been held that because the regulations provide that an inmate should be released to the general prison population "as soon as appropriate," § 95.107(c), an inmate has a fourteenth amendment liberty interest "in freedom from segregated confinement." *United States of America ex rel. Hoss v. Cuyler,* 452 F.Supp. at 289-90. If a factfinder concludes that the prison administrators abused their discretion in placing plaintiff in segregation for two months given the nature and seriousness of the misconduct, the need for disciplining the inmate, the inmate's institutional history, and other factors they may assess, plaintiff will have proved his claim. Since factual determinations must be made on these issues, summary judgment would be inappropriate.

### D

█ Defendant Spaid asserts as a second ground in support of his motion for summary judgment, that he is immune from a finding of liability on the basis of a good faith defense. In *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) the Supreme Court held that prison officials can assert a good faith defense to a claim of infringement of rights. In an earlier case, *Wood v. Strickland,* 420 U.S.

308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975), the Court defined the objective and subjective bases of that defense, holding that defendants must establish that there were reasonable grounds for their belief that they acted in good faith, and that in fact they did not act with malicious intent. Defendant Spaid by affidavit asserts that he acted on a good faith belief that he was not violating any of plaintiff's rights, and that he bore plaintiff no malice. As a general rule summary judgment is an inappropriate means for determining good faith. In particular in this case, inasmuch as I have found that plaintiff's rights are defined by regulations that are known to defendant Spaid and that genuine issues of material fact exist as to whether plaintiff was deprived of these rights in violation of the fourteenth amendment due process clause, I am all the more reluctant to determine the qualified immunity question as a matter of law. Therefore I deny defendant Spaid's summary judgment motion on this ground as well as the first.