William A. HODGIN

v.

Lawrence V. ROTH, Jr., individually and in his official capacity as Warden of Montgomery County Prison, et al.

Civ. A. No. 81–227.

United States District Court, E. D. Pennsylvania.

March 30, 1982.

William J. McDevitt, Philadelphia, Pa., for plaintiff.

John J. Gallagher, Philadelphia, Pa., for defendants.

* "Zambert" in plaintiff's complaint. The correct name, according to defendants' counsel, is "Zamperri."

1. Plaintiff also complained against a number of unnamed employees of the Montgomery County Sheriff's Department for injuries he suffered while being transported from MCP to court on June 14, 1980. The parties are presently conducting discovery in an attempt to ascertain the identities of the unnamed defendants.

## OPINION

LUONGO, District Judge.

In this action brought pursuant to 42 U.S.C. § 1983, plaintiff, William A. Hodgin, a prisoner at the State Correctional Institution at Graterford, asserts numerous constitutional claims stemming from two separate incidents which occurred while he was in custody at Montgomery County Prison (MCP). Named as defendants are the Warden of MCP (Roth), three assistant wardens (McCoy, Carlin and Kilgonnon), the prison doctor (Andries), four medical officers (Palmer, Mickiewicz, Alterman and Malloy), and nine correctional officers (Fleas, Calhoun, Reynolds, Zamperri,* Bucci, Perna, Porcelli and Fisher).[1] Plaintiff instituted this action *pro se*, but counsel has since been appointed on his behalf. Plaintiff seeks, *inter alia*, a declaration that defendants' acts were unconstitutional and an award of compensatory and punitive damages.[2] Presently before me are motions (1) for summary judgment in favor of all defendants on "Causes of Action" I–IV on the ground that these counts are in the nature of habeas corpus and do not state a claim under § 1983, and (2) for summary judgment on behalf of defendants Roth, McCoy, Carlin, Kilgonnon, Andries, Palmer, Mickiewicz, Alterman and Malloy on the ground that there is nothing in this record establishing their involvement in the events in issue.

The material undisputed facts are as follows. As stated, plaintiff's claims arise out of two separate events which occurred while he was in custody at MCP awaiting trial on burglary charges.[3] The first incident took place on June 24, 1980 when,

2. In addition, plaintiff seeks an award of attorney's fees and an injunction preventing his transfer from Graterford. Because all of the defendants named in the complaint are employed at Montgomery County Prison and plaintiff is now incarcerated at Graterford, plaintiff's claims for injunctive relief against the Montgomery County Prison personnel are moot.

3. Plaintiff apparently was also in custody pursuant to a detainer issued by Chester County for a probation violation.

during a dispute with a food server on a cafeteria line, plaintiff threw his food tray, with a bowl of soup on it, at the server. Within moments defendants Reynolds, Calhoun and Fleas appeared, forcibly restrained plaintiff, and carried him away from the scene. Defendant Bucci then removed plaintiff to the law library and a half hour later escorted plaintiff to the infirmary where plaintiff received medical attention from defendant Mickiewicz for injuries to plaintiff's back, hand, neck and face, which he allegedly suffered in the encounter with Reynolds, Calhoun and Fleas.

After receiving medical treatment, plaintiff was not returned to his regularly assigned cell, he was placed in a confinement cell pending a hearing on his actions. According to a written prison policy, prison officials are permitted to confine prisoners charged with an offense against "person or property" prior to a hearing on the charge. The policy requires, however, that a hearing be given within four days after the inmate has been notified of the violation of which he is accused. Plaintiff was notified of the violation on June 24, but he was not given a hearing. He remained in the confinement cell from June 24 to June 30. During that period plaintiff visited the infirmary every day complaining of pain in his back. On June 30, after complaining of dizziness and loss of consciousness, plaintiff was moved to a cell in the infirmary where he remained for two or three days. He was then returned to administrative confinement in a "front jail cell." [4] On July 9, 1980, plaintiff was taken to Sacred Heart Hospital where x-rays of his back disclosed no physical damage.

The second incident giving rise to this complaint occurred on July 14, 1980 when plaintiff was scheduled to appear in Montgomery County Court of Common Pleas to enter a plea to the burglary charges. That morning defendant Zamperri came to plaintiff's cell to take him to court. Plaintiff, still complaining of back pain, demanded a wheel chair. Defendants Zamperri, Perna, McBride and Porcelli surrounded plaintiff, carried him to the front door and turned him over to the Montgomery County Sheriff's Department for transport to court. At his court appearance plaintiff pled guilty to the burglary charges.

Plaintiff asserts various claims out of the above facts. Some of his claims pertain solely to the June 24 incident, some pertain solely to the July 14 incident, and others encompass both events. Specifically, plaintiff asserts that defendants violated his due process rights by keeping him in confinement for the period in issue without affording him a hearing. (Complaint, Causes V and VI) Plaintiff also contends that, on both occasions, his medical needs were neglected and he was subjected to undue physical force, (id. Cause VII), both by MCP personnel and by Montgomery County Sheriff personnel. (Id.) Finally, plaintiff asserts that the actions of defendants on July 14, 1980, made it impossible for him to participate meaningfully in the court proceedings at which he entered his guilty plea and, therefore, he asserts that his plea was induced in violation of various of his constitutional rights (Causes I–IV).

On the motions for summary judgment, the moving parties, of course, have the burden of establishing that no material issue of fact remains for trial and that they are entitled to judgment as a matter of law. Further, all inferences of fact must be drawn in favor of the non-moving party.

---

4. It is not altogether clear from the record whether, as alleged in the complaint, plaintiff was returned to administrative confinement after he left the infirmary. In his deposition plaintiff testified that he returned to "cell No. 3 front jail." (Hodgin Deposition at 70.) The written prison policy, attached to plaintiff's memorandum in opposition to Defendants' Motion for Summary Judgment, provides, "If the inmate must be confined before the hearing, he is moved to any of the Front Jail Cells." It is not clear from this policy whether all cells in "front jail" are confinement cells. However, since all inferences must be drawn in favor of the non-moving party on a motion for summary judgment, I will assume that plaintiff remained in confinement when he left the infirmary.

## I. *Causes I–IV*

All defendants move for summary judgment on Causes I–IV which provide:[5]

## VI. FIRST CAUSE OF ACTION

1. Defendants and their agents, by denying the plaintiff the right to go to trial on the merits of his case, violated the plaintiff's right to access to the courts under the First Amendment to the Constitution of the United States.

## VII. SECOND CAUSE OF ACTION

1. Defendants and their agents, by denying the plaintiff the right to go to trial on the merits of his case, violated the plaintiff's right to Jury Trial by his peers, under the Sixth Amendment to the Constitution of the United States.

## VIII. THIRD CAUSE OF ACTION

1. Defendants, by denying the plaintiff the right to go to trial on the merits of his case, violated the plaintiff's right to due process of the law under the Fifth and Fourteenth Amendments to the Constitution of the United States.

## IX. FOURTH CAUSE OF ACTION

1. Defendants and their agents, by depriving the plaintiff of the right to go to trial on the merits of his case, violated the plaintiff's right to freedom from self incrimination under the Fifth Amendment to the Constitution of the United States.

Defendants contend that in these four causes, plaintiff is essentially claiming that his guilty plea was involuntary and that he is, therefore, challenging the validity of his conviction and the fact of his confinement, and that his exclusive remedy is habeas corpus. 28 U.S.C. § 2254. They argue that, since plaintiff has not exhausted his state remedies, his § 1983 claim for damages must be dismissed insofar as it seeks to attack collaterally his conviction as resulting from an involuntarily induced guilty

plea. *See Preiser v. Rodriquez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

Although phrased as violations of various constitutional provisions, Causes I–IV are actually claims by plaintiff that he was denied the right to trial by jury and that his guilty plea was involuntary. In his deposition plaintiff stated that defendants violated his right to access to the courts because in his view

> To go to trial you should be competent, you should be aware of your surroundings. Because of the manner I was brought over to the courthouse, I could not be conscious of what was going on. (Hodgin Deposition at pp. 102–03)

Plaintiff is plainly contending that he was unable to participate intelligently in the court proceedings on July 14. Because the end result of his asserted lack of competency was his guilty plea, I agree that Causes I through IV must be viewed as seeking to obtain monetary relief for an invalid conviction on the ground that his guilty plea was involuntarily induced.

In *Preiser v. Rodriquez, supra*, the court held that:

> When a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.

411 U.S. at 500, 93 S.Ct. at 1841.

Plaintiff's claim does not fall within *Preiser* since he does not seek relief in the form of an order directing his release from custody, he seeks only an award of damages for an invalid conviction. The Third Circuit Court of Appeals has expressly left open the question whether *Preiser* requires "exhaustion when plaintiff's § 1983 damage action challenges the fact of confinement by attacking the underlying criminal conviction which caused the confinement." *Davis v. Rendell*, 659 F.2d 374, 377 (3d Cir. 1981). In the absence of a binding ruling from the Court

---

**5.** Plaintiff's appointed counsel did not amend   the complaint.

of Appeals for this circuit, I agree with the significant number of courts which have held that the type of relief a prisoner seeks is not dispositive, and that a prisoner cannot seek to attack his conviction in a § 1983 damage action without first affording the state courts the opportunity to grant him relief. *See, e.g., Hamlin v. Warren,* 664 F.2d 29, 32 (4th Cir. 1981); *Parkhurst v. State of Wyoming,* 641 F.2d 775, 777 (10th Cir. 1981); *Fulford v. Klein,* 529 F.2d 377, 381 (5th Cir. 1976), adhered to on rehearing en banc, 550 F.2d 342 (5th Cir. 1976); *Guerro v. Mulhearn,* 498 F.2d 1249, 1254 (1st Cir. 1974); *Carter v. Newburgh Police Department,* 523 F.Supp. 16, 19 (S.D.N.Y.1980); *Matos v. Quealy,* 524 F.Supp. 15, 17 (S.D.N.Y.1981); *Clark v. Zimmerman,* 394 F.Supp. 1166, 1174 (M.D.Pa.1975). The Supreme Court's rationale in *Preiser,* that to allow a prisoner to seek release from confinement under § 1983 would run afoul of the principles of state-federal comity embodied in the rule of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and the exhaustion requirement of § 2254, is, in my view, equally applicable where the prisoner seeks damages relief for an invalid conviction. As stated by the Court in *Guerro v. Mulhearn, supra,* 498 F.2d at 1253

Despite the difference in the form of relief being sought, a suit for money damages under section 1983 may also have a substantially disruptive effect upon contemporary state criminal proceedings, and may also undermine the integrity of the writ of habeas corpus. Where the federal court, in dealing with the question of damages caused by violation of civil rights, would have to make rulings by virtue of which the validity of a conviction in contemporary state proceedings would be called in question, potential for federal-state friction is obvious. The federal ruling would embarrass, and could even intrude into, the state proceedings. Questions concerning the effect to be given the federal ruling in the state courts might be difficult ones, and could lead to delay, or even derailment of the course of the state action. It is not impossible that circumstances might arise where a federal judgment for damages could be used by a state defendant to obtain his release from, or prevent, his incarceration, thus presuming upon, if not preempting, the province of the Great Writ.

*Id.* Accordingly, since plaintiff has not established that he has exhausted his available state remedies, Causes I–IV, in which he seeks solely to challenge the validity of his conviction, cannot presently be considered in this § 1983 action, and they will be dismissed [6] without prejudice.[7] I emphasize

---

6. A number of courts of appeals have suggested that the district courts should dismiss plaintiff's § 1983 claim only if the claim, when it can be brought, will not be barred by the statute of limitations. According to these courts, if the claim would be barred, the better practice is for the district court to retain jurisdiction and stay consideration of the challenge to the conviction pending the ultimate resolution of the habeas proceedings. *See, e.g., Franklin v. Webb,* 653 F.2d 362, 364 (8th Cir. 1981) (per curiam); *Parkhurst v. State of Wyoming,* 641 F.2d 775, 777 (10th Cir. 1981); *Delaney v. Giarrusso,* 633 F.2d 1126, 1128 (5th Cir. 1981).

Under § 1983, I must look to Pennsylvania law for the analogous statute of limitations which is two years, 42 Pa.Cons.Stat.Ann. § 5524. Pennsylvania, unlike some other states, does not provide that imprisonment tolls the statute of limitations. In the instant case it is a virtual certainty that plaintiff will be unable to exhaust within two years of his conviction and, therefore bring his § 1983 claim with-

in that time. There is a serious question as to whether application of Pennsylvania's tolling rule to bar plaintiff's claim, if and when he brings it, would be consistent with the policies underlying § 1983. *See Wallace v. Hewitt,* 428 F.Supp. 39, 44 (M.D.Pa.1976). *But see Singleton v. New York,* 632 F.2d 185, 193 (2d Cir. 1980). The uncertainty surrounding the fate of plaintiff's claim would normally counsel toward the retention of jurisdiction. *See Williams v. The Red Bank Board of Education,* 508 F.Supp. 989 (3d Cir., 1981). However, despite this uncertainty, I will dismiss "Causes 1–IV" because defendants have stipulated that, if plaintiff refiles these claims after exhausting, they will not raise the bar of the statute of limitations.

7. Of course when, and if, plaintiff brings his § 1983 claim, the findings made during his habeas proceedings very well may have preclusive effect in the § 1983 action. *See Preiser v. Rodriquez, supra,* 411 U.S. at 475, 93 S.Ct. at 1829.

that the claims are dismissed only insofar as plaintiff seeks to establish that his conviction was invalid because he was incompetent to enter a valid guilty plea. There remains plaintiff's § 1983 damage claims against defendants for using undue force in removing him from his cell and transporting him to the courthouse on July 14. These claims, which are raised in causes other than I–IV, are appropriately considered in this action with the limitation that plaintiff will not be permitted to place in issue his contention that he was rendered incompetent to participate intelligently in the criminal trial as a result of the use of force.

## II. *Individual Defendants*

Defendants Roth, McCoy, Carlin, Kilgonnon, Andries, Palmer, Alterman, and Malloy move for summary judgment on all claims on the ground that there is no material issue of fact as to their liability for the events in issue.

Defendants Andries, Palmer, Mickiewicz, Alterman and Malloy afforded medical treatment to plaintiff at MCP. Plaintiff, through counsel, now concedes that he has not stated a claim against these defendants, accordingly, their motion for summary judgment will be granted.

Defendant Roth is the Warden of MCP and defendants McCoy, Carlin and Kilgonnon are assistant wardens of that institution. These defendants will hereinafter be referred to as the supervisory defendants. They contend that there is nothing in this record establishing their personal involvement in the events in issue and that plaintiff has, therefore, failed to state a claim against them.

·[6] It is well settled in this Circuit that prison supervisory personnel cannot be held liable under § 1983 unless there has been some showing that they were either directly involved in, or had knowledge of and acquiesced in, the constitutional violations. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976); *United*

*States ex rel Smith v. Robinson*, 495 F.Supp. 696, 698 (E.D.Pa.1980).

### (a) *The June 24 Incident*

After conducting discovery in the instant case, plaintiff has failed to set forth any factual support linking either Roth, McCoy, Carlin or Kilgonnon to the events on June 24, when plaintiff contends that undue force was used against him. Accordingly, I will grant those defendants' motions for summary judgment on plaintiff's claim that he was subjected to undue force on June 24.

### (b) *Lack of Adequate Medical Care*

· ■ Since plaintiff has conceded that he has failed to state a claim against any medical personnel, it is doubtful that he still seeks to press his claims of improper treatment against the supervisory personnel. Assuming that he does still seek to recover against the supervisory personnel on that basis, there is nothing in this record to indicate that the supervisory defendants deliberately or intentionally prevented plaintiff from receiving medical aid or that they knew that he was receiving inadequate care. Accordingly, the supervisory defendants' motion for summary judgment will be granted as to plaintiff's claim that he was subjected to cruel and unusual punishment by reason of inadequate medical care. *See Hampton v. Holmesburg Prison Officials, supra.*

### (c) *The July 14 Incident*

■ Turning to the July 14 incident, my ruling that plaintiff cannot, in this proceeding, attempt to establish that he was rendered incompetent limits his claim to one for damages for the use of undue force in removing him from his cell. Nothing in this record suggests that defendants McCoy, Carlin, and Kilgonnon had any involvement in that event and their motion for summary judgment will be granted.[8] Warden Roth's situation differs somewhat. From his answers to interrogatories, it is apparent that he was informed of Hodgin's

---

**8.** Further, plaintiff has set forth no evidence linking the supervisory defendants to anything that happened to him while he was being transported from the jail to the courthouse.

demand for a wheel chair for his trip to the prison and of the fact that Hodgin was not cooperating with the prison guards. After consulting with medical authorities at the prison, Roth ordered the guards to have plaintiff ready for court and to release him to the Sheriff. (Roth's Answer to Plaintiff's Interrogatories, 2d Set No. 7, Document 20). Notwithstanding Roth's knowledge of the general situation, there is no material issue of fact as to Roth's liability for the use of undue force against plaintiff. At most, Roth's answers show only that he gave the order to have plaintiff ready for court, there is nothing to support a finding that Roth was involved in, or knew of, and acquiesced in the alleged use of undue force against plaintiff on July 14, 1980. Accordingly, I will also grant Warden Roth's motion for summary judgment on plaintiff's claim that he was subjected to undue force on July 14.

### (d) *The Due Process Claim*

■ In their motion, the supervisory defendants have not responded to plaintiff's claim that he was denied due process when he was kept in continuous confinement after the June 24 incident without being afforded a hearing. Assuming for the moment that plaintiff's due process rights were violated,[9] Roth, by virtue of his position as warden, is subject to suit for the asserted due process violation. *See United States ex rel Smith v. Robinson,* 495 F.Supp. 696, 698–699 (E.D.Pa.1980). So, too, is defendant McCoy, whose duties include responsibility for prison security, and who is also a member of the Prison Disciplinary Board which is required to afford hearings to prisoners charged with violations of prison rules. (*See* McCoy's Answers to Interrogatories, 2d Set, at No. 16; *see also* Prison Policy Statement, attached to Plaintiff's Response to Defendants' Mo-

tion for Summary Judgment.) The remaining two supervisory defendants, Kilgonnon and Carlin, have not submitted affidavits nor have they pointed to anything in the record showing that they lacked knowledge of plaintiff's continued administrative confinement without a hearing or that they lacked supervisory responsibility for that situation. Since they are assistant wardens of the prison, I cannot, on this record, say that there is no material issue of fact as to their liability for the asserted due process violation. Accordingly, I will deny the motion of these defendants for summary judgment on plaintiff's claim that his continued administrative confinement without being afforded a hearing violated his right to due process.

To summarize, plaintiff's first four causes of action (Causes I–IV) will be dismissed without prejudice on the ground that the claims made therein must be initially raised by way of habeas corpus. The motions of defendants Roth, McCoy, Kilgonnon and Carlin for summary judgment will be granted as to all claims except for plaintiff's claim that he was denied due process by being kept in administrative confinement without being afforded a hearing. The motions of defendants Andries, Palmer, Alterman, and Malloy for summary judgment will be granted.

---

9. Because I have been provided with only a very limited excerpt of the prison policy establishing procedures regarding administrative confinement, I do not decide whether plaintiff had a cognizable liberty interest in not being held in confinement for the period in question without being afforded a hearing. I do note that from what has been supplied, plaintiff's claim that he had a liberty interest is certainly not frivolous. *See Helms v. Hewitt,* 655 F.2d 487 (3d Cir. 1981), petition for cert. granted, —— U.S. ——, 102 S.Ct. 1629, 71 L.Ed.2d 865, (1982).