William KING

v.

Warden Edward L. JENKINS.

Civ. A. No. 84–1221.

United States District Court,
E.D. Pennsylvania.

Jan. 23, 1985.

Frederick C. Hanselmann, German, Gallagher & Murtagh, Philadelphia, Pa., for plaintiff.

Felix P. Gonzalez, Asst. City Solicitor, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

VanARTSDALEN, District Judge.

In this action William King, a prisoner at Holmesburg Prison, has filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated in connection with his protective segregation from the general prison population for a period of one week. Defendant's motion to dismiss was denied because it contained a number of unsupported factual allegations. Defendant has now filed a motion for summary judgment supported by two depositions and an affidavit. Plaintiff, through his court appointed counsel, has responded to that motion.

In deciding a motion for summary judgment the court must determine whether the moving party has carried its burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). All reasonable inferences from the evidentiary material of record must be drawn in favor of the nonmoving party. *Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir.1980). A response to a properly supported summary judgment motion may not rest upon the allegations of the pleading but must present, by affidavit or otherwise, specific facts sufficient to create a genuine issue of material fact. Fed.R.Civ.P. 56(e); *Sunshine Books, Ltd. v. Temple University*, 697 F.2d 90, 96 (3d Cir.1982). In the present case there is some uncertainty in the memories of the various actors as to the specific days and times at which certain events took place. There is, however, no

dispute as to any material fact precluding judgment as a matter of law.

Plaintiff's complaint states:

I had been locked in a cell for over 100 hours, no bath, nor have I been able to walk around for any exercise, I was told that I was placed in this cell for my own protection, because I was told by another resident that my life was endanger [sic], but had found out that it was only a lie, in fact I wrote the warden of the prison and informed him that it was not true at all, but still he has not allowed me to talk with him nor to come out of this cell.

On Monday, March 5, 1984, the defendant, Warden Edward L. Jenkins, received a telephone call from an attorney, Donald Bronstein. Mr. Bronstein told Warden Jenkins that he had information from an inmate in the special custody unit that inmates in that unit had been making homemade knives. Mr. Bronstein did not tell Warden Jenkins who the informant was.

The Warden immediately had the cells in that unit searched, but no weapons were found.[1] Warden Jenkins, in his deposition, described what such a search is like: "They lock up the entire cell block, each inmate in his own cell. Each cell is searched individually. The individual in the cell is searched, his person is searched. He's asked to strip and all of his personal effects, his bed and everything is searched." Jenkins Deposition at 11. The inmates were very upset and wanted to know what had precipitated the shakedown.

At that point King stated before a prison official, Sergeant Mercer, and before all the inmates in the unit, that he had precipitated the search by getting a lawyer to call the Warden. The Warden directed that King be placed in a cell separated from the rest of the special custody unit for his own

protection, fearing reprisal for his instigating the search.

On either Thursday March 8, 1984 (see Velitskovich Deposition at 31) or on Friday, March 9, 1984 (see Jenkins Deposition at 24) King was given a hearing before the administrative segregation review board. King testified at that hearing and was questioned by members of the board. The board's recommendation was that King not be released from protective segregation.

On Friday, March 9, 1984 King communicated to Warden Jenkins orally that he no longer feared for his life. Jenkins asked King to put that representation in writing. King submitted a written request to be released from segregation because he no longer feared for his life, but the request did not reach Jenkins on Friday, March 9 because he had gone home for the weekend. Either on Friday, March 9, or on Monday, March 12, Jenkins and Superintendent Owens interviewed three prisoners in the special custody unit to find out whether it was safe for King to return to that unit. Finally on Monday, March 12, King was released from segregation and placed back in his usual cell in the special custody unit.

The special custody unit, in which King is normally housed, is itself a protective segregation unit. King has, in the past, had troubles with a "radical organization of black Muslims, Fruit of Islam." Velitskovich Deposition at 28.[2] When King was placed in protective segregation the week of March 5, 1984, therefore, he was separated from the other inmates who were also in protective segregation.

Defendant contends that the only conceivable constitutional rights presented in this case are the eighth amendment guaranty against cruel and unusual punishment and the fourteenth amendment protection

---

1. There is some evidence that some broken pieces of a bed frame were found at some point, and that such objects could be made into knives. See Velitskovich Deposition at 21–22. Whether or not weapons were found does not alter the situation at the prison regarding the plaintiff and thus the discrepancy is not a dispute as to a material fact.

2. One time King had a caustic solution thrown in his face by a member of Fruit of Islam. He now regularly resides in the special custody unit for fear of a repeat of such an incident at the hands of any of the Fruit of Islam members in the general prison population.

against deprivation of liberty without due process of law. He further contends that he is entitled to judgment as a matter of law on any such claims.

Plaintiff contends that the deposition testimony of Jenkins and Velitskovich establishes that the procedures mandated by the Pennsylvania Administrative Code with respect to review of segregation status of prisoners were not followed. Plaintiff further contends that there is an issue of fact whether King's exercise and telephone privileges were curtailed during his protective segregation the week of March 5, 1984.

■ On the facts before the court, there is no valid eighth amendment cruel and unusual punishment claim.[3] There is no "static 'test' ... by which courts can determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion)). The Supreme Court has opined, however, that prison "[c]onditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. at 347, 101 S.Ct. at 2399. Deliberate indifference to an inmate's medical needs constitutes cruel and unusual punishment, *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976), as does deprivation of basic human needs, *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

■ Confinement in protective segregation necessarily entails some restriction as to an inmate's activities because he or she cannot mix with the prison's general population. Transfer to a more restrictive environment for nonpunitive reasons does not

violate any constitutional rights of an inmate. *See Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983) ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.").

In the present case King was already housed in the special custody unit. He was transferred to a cell separated from the other inmates in that unit for his own protection. In his complaint, King asserts that he "had been locked in a cell for over 100 hours, no bath, nor have I been able to walk around for any exercise." The cell he was transferred to had a toilet in it. Jenkins Deposition at 36. Jenkins' uncontroverted testimony was that when he ordered King placed in protective segregation he instructed the prison officers to "make sure that he [King] gets his two hours exercise every day." Jenkins Deposition at 20. There is no evidence, beyond the unsupported allegation in plaintiff's complaint, that he did not get his daily exercise period. Even if he did not get his exercise period there is no evidence that Jenkins, the only defendant, was informed or had any knowledge of that fact.

■ There is insufficient evidence to find that Warden Jenkins denied King any basic human needs. Indeed, there is no evidence that Jenkins played any part in denying King any inmate privileges whatsoever or that he was aware of such, if in fact King was denied any privileges. The doctrine of respondeat superior does not apply in section 1983 actions, and, therefore, Jenkins could not be held liable even if there were an eighth amendment violation. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir.1976); *see also Hodgin v. Roth*, 536 F.Supp. 454, 460 (E.D.Pa.1982) ("prison supervisory personnel cannot be held liable under § 1983

---

**3.** The eighth amendment guaranty against cruel and unusual punishment is applicable to the states through the fourteenth amendment. *Rob-*

*inson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

unless there has been some showing that they were either directly involved in, or had knowledge of and acquiesced in, the constitutional violations"). Mere negligence on the part of Jenkins, had there been any, would not be sufficient to state a section 1983 cause of action against him. *See Davidson v. O'Lone,* 752 F.2d 817 (3d Cir. 1984) (in banc). There is no basis for a section 1983 claim against Jenkins for a violation of the eighth amendment.

■ As the Supreme Court has held, the Pennsylvania Administrative Code establishes that prison inmates have a protected liberty interest in continuing to reside in the general prison population. *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). For purposes of the present case the Pennsylvania Code established King's interest in remaining in his usual cell in the special custody unit. Although courts may look to state law, among other sources, for a basis establishing a liberty or property interest protected by the due process clause, *see id.* at 470–72, 103 S.Ct. at 870–72, courts must determine, as a matter of federal constitutional law, what process is required by the due process clause. *Grandison v. Cuyler,* 600 F.Supp. 967 (E.D.Pa.1984); *see Hewitt v. Helms,* 459 U.S. at 472–74, 103 S.Ct. at 872–73; *Wolff v. McDonnell,* 418 U.S. 539, 559–72, 94 S.Ct. 2963, 2976–82, 41 L.Ed.2d 935 (1974); *Mims v. Shapp,* 744 F.2d 946, 950 (3d Cir.1984).

■ Plaintiff raises the contention that defendant's conduct arguably did not comply with the specifics of the procedures mandated by the Pennsylvania Code[4] and that, therefore, summary judgment on plaintiff's section 1983 claim is inappropri-

ate. State law, however, does not define what process is due.

In determining what process is due, courts should consider three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). In the present case the private interest is relatively minor: transfer from one protective segregation unit to protective segregation isolated from the other residents of the special custody unit. *Cf. Hewitt v. Helms,* 459 U.S. at 473, 103 S.Ct. at 872.

Plaintiff was only detained in special segregation for a period of one week until the warden was reasonably assured that it was safe for him to return to his usual cell. Plaintiff does not even complain about his initial segregation or the decision of the review board that he should remain in special protective segregation. His complaint is that he was not released immediately upon orally informing the authorities that he no longer feared for his life.

Warden Jenkins refused to release him until he received notice in writing that King no longer feared for his life and until Jenkins had satisfied himself that there was no danger. The federal courts have granted prison officials a wide degree of discretion in deciding what action is neces-

---

**4.** 37 Pa.Code § 95.104(b)(3), cited by plaintiff, provides:

> An inmate may be temporarily confined to Close or Maximum Administrative Custody in an investigative status upon approval of the officer in charge of the institution where it has been determined that there is a threat of a serious disturbance or a serious threat to the individual or others. The inmate shall be notified in writing as soon as possible that he

is under investigation and that he will receive a hearing if any disciplinary action is being considered after the investigation is completed. An investigation shall begin immediately to determine whether or not a behavior violation has occurred. If no behavior violation has occurred, the inmate must be released as soon as the reason for the security concern has abated but in all cases within ten days.

59

sary to ensure the safety of inmates and guards. *See Hewitt v. Helms,* 459 U.S. at 472–74, 103 S.Ct. at 872–73; *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). The Supreme Court in *Hewitt* noted that prison officials' decisions in this context "turn[ ] largely on 'purely subjective evaluations' and on predictions of future behavior." 459 U.S. at 474, 103 S.Ct. at 873 (quoting *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981)).

King was afforded a hearing within four or five days of his segregated confinement and was assured of at least weekly review by the review board. When he believed he was no longer in danger and made that representation to prison officials, he was returned to his usual cell within three days upon a decision by officials that it was safe for him to return. His total period of confinement in special protective segregation was approximately one week. To require any more stringent procedure than that granted by prison officials in this case would unduly interfere with the discretion that must be exercised by prison officials in ensuring the safety of inmates and guards. *Cf. Hewitt,* 459 U.S. at 472–76, 103 S.Ct. at 871–74.

The government interest in ensuring the safety of those entrusted to its care is a very significant one. That interest cannot be adequately served unless prison officials are permitted to exercise their discretion in making subjective evaluations and predictions of future behavior. Mr. Velitskovich, a social worker at the house of corrections and a member of the review board, noted in his deposition:

I had spoken to a few of the other inmates who felt that Mr. King was acting out a little bit too much, he was excessively paranoid where he didn't have to be paranoid, and nobody was going to hurt him. But, you know, you can hear one thing from somebody, but you can never be completely sure. You don't know. They will tell you—residents will tell you one thing and as soon

as he [King] gets out, it could be something else.

Velitskovich Deposition at 16–17. Such testimony confirms that discretion of prison officials is necessary in contexts such as this one.

Warden Jenkins was required to walk the line between denying King due process by not granting him adequate protection in the face of a known danger, *cf. Davidson v. O'Lone,* 752 F.2d 817 (3d Cir.1984) (in banc), and denying King due process by subjecting him to unwarranted restrictive confinement. This is at best a difficult and complex choice that wardens of penal institutions are daily required to make. Courts must be vigilant to protect the rights of prison inmates, but at the same time must afford prison custodians necessary latitude to operate the institutions in a way that will provide safety to the inmates and prison personnel, without fear of being liable in damages. In the present case Warden Jenkins' actions were entirely consistent with protecting plaintiff's constitutional rights.

ORDER

Upon consideration of defendant's motion for summary judgment and supporting and opposing memoranda of law and depositions and affidavit; it is

Ordered that defendant's motion for summary judgment is granted and judgment is entered in favor of defendant, Warden Edward L. Jenkins and against the plaintiff, William King.