Michael Thomas HARPER, Appellant,

v.

Donald JEFFRIES, and Pennsylvania Board of Probation and Parole, Appellees.

No. 86–5362.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 15, 1986.

Decided Dec. 31, 1986.

Michael Thomas Harper, pro se.

LeRoy S. Zimmerman, Atty. Gen., Kate L. Mershimer, Deputy Atty. Gen., John G. Knorr, III, Sr. Deputy Atty. Gen., Andrew S. Gordon, Chief Deputy Atty. Gen., Chief, Litigation Section, Harrisburg, Pa., for appellees.

Before GIBBONS, WEIS, and MARIS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

This is an appeal by a pro se petitioner from a dismissal of his claim of civil rights violations brought under 42 U.S.C. § 1983. The petitioner, a parolee, alleges that he was improperly imprisoned and deprived of his civil rights by parole officials who filed fabricated charges of parole violation against him. The magistrate below recommended to dismiss the petitioner's § 1983 claim for damages because it was brought in conjunction with petitioner's claim challenging his confinement in state prison. The magistrate reasoned that the latter claim was actually a petition for habeas corpus which federal courts could not entertain before the petitioner exhausted all available state remedies. The magistrate further opined that the petitioner's sole avenue of relief in federal court was to file a petition for habeas corpus after pursuing all appropriate state remedies. The United States District Court for the Middle District of Pennsylvania summarily adopted the magistrate's opinion and dismissed both of the petitioner's claims. Because we believe that the magistrate misapplied the extant law regarding concurrent claims for § 1983 damages and habeas corpus relief, we reverse.

## I.

On September 17, 1985, the appellant, Michael J. Harper, was arrested by police from the City of York, Pennsylvania, on a parole arrest warrant. The warrant was issued, on allegedly false information, by the appellant's parole officer, Donald Jeffries, on the previous day. It specifically averred that the appellant had violated the terms of his parole and it authorized his immediate detention at a Pennsylvania correctional institution.[1]

Shortly after the appellant's arrest, Parole Officer Jeffries supposedly informed the Pennsylvania Parole Board that the appellant had been arrested on new criminal charges. Jeffries so alerted the Parole Board, even though, in actuality, no criminal warrants had been executed against the appellant. The appellant has since written to Parole Board officials on numerous occasions to contest his illegal arrest and detention. Nevertheless, the appellant's requests for administrative relief were denied in March, 1986, and he currently remains in detention at the State Correctional Institution at Rockview, Bellefonte, Pennsylvania.

As a result of his incarceration, the appellant filed an action against the Pennsylvania Parole Board on April 16, 1986. The appellant's complaint asserted that, as a result of Jeffries' and the Parole Board's actions, his business had suffered, he was in debt, and his wife had divorced him and had taken custody of their son. In his original complaint, the appellant sought release from prison, damages under 42 U.S.C. § 1983 for violation of his civil rights, and other declaratory relief.

The controversy was immediately presented to a United States Magistrate. Before the magistrate could render an opinion, however, the appellant filed a "Motion for Leave to Amend Original Civil Rights Act Complaint" on April 18th. Report of Magistrate at 2. In this motion, the appellant sought to remove as a defendant the Pennsylvania Board of Probation and Pa-

---

1. Curiously, the only identifying mark on the warrant was a rubber stamp bearing the name of Fred W. Jacobs. *See* Respondent's Brief at 5 (citation omitted).

role and to add as a defendant James Riggs, a hearing examiner for the Parole Board. It is the appellant's contention that Riggs and Jeffries conspired to have the appellant wrongfully incarcerated, thereby denying him of his civil rights and giving rise to the instant cause of action.

On April 28th, the magistrate issued his recommendation. This recommendation reasoned that, even though the appellant had set forth a claim for § 1983 damages, the primary purpose of his complaint was to attack his wrongful confinement—a classic habeas corpus situation. Citing the United States Supreme Court's decision in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the magistrate stated, "If a petitioner, although framing his claim in civil rights, is, in reality, attacking the fact or duration of confinement, the proper federal remedy is by way of habeas corpus." Report of Magistrate at 2. Accordingly, the magistrate urged that the appellant be instructed to exhaust all potential state remedies before being allowed to pursue his claim in federal court on a petition for habeas corpus.

The magistrate further stated that the defendants, as parole officers and officials, enjoyed immunity from suits of the type brought by the appellant. *See id.* at 3 (citations omitted). Hence, the magistrate urged that all of the appellant's claims in federal court be dismissed without issuance of process.[2] On May 16, 1986, the district court accepted the magistrate's report and dismissed all of the appellant's claims for relief. This appeal followed.

## II.

It is clear that a state prisoner seeking to gain release in a federal court must first exhaust all available state remedies before pursuing a petition for habeas corpus. 28 U.S.C. § 2254(b) (1982). A habeas corpus petition presenting unexhausted claims must be dismissed. However, when a state prisoner brings, along with his petition for release from confinement, a legitimate action for damages pursuant to the federal civil rights laws, the damage claim should not be dismissed. The United States Supreme Court dealt with this question in explicit terms in its 1973 decision of *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439. There, the Supreme Court stated:

> If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy. Accordingly, as petitioners themselves concede, a damages action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies.

*Id.* at 494, 93 S.Ct. at 1838 (citing *Ray v. Fritz*, 468 F.2d 586 (2d Cir.1972)). In view of this specific language, the magistrate's reliance on *Preiser* for a contrary conclusion is misplaced. Since the Supreme Court would allow a damages action by a state prisoner "without ... prior exhaustion of state remedies," *id.* 411 U.S. at 494, 93 S.Ct. at 1838, we are obligated to allow the appellant to proceed with his instant § 1983 claim.

The cases which the respondents cite to do not lead us to a contrary determination. The respondents recognize that this court has not directly addressed the issue now before it,[3] but they point out that several district courts and courts of appeals have reasoned that a state prisoner cannot challenge the validity of his confinement, even if he asserts a § 1983 damages claim, when he has not exhausted all avenues of relief in state court. *See, e.g., Ybarra v. Reno Thunderbird Mobile Home Village*, 723

---

2. The magistrate did recommend, however, that the appellant's motion to proceed *in forma pauperis* be granted. *See* Report of Magistrate at 4.

3. The respondents point out that in *Davis v. Rendell*, 659 F.2d 374, 378–79 (3d Cir.1981), this court specifically "reserved the issue whether the holding of *Preiser* and the accompanying requirement of exhaustion of remedies could be avoided by adding a claim of damages to a habeas corpus claim." Respondent's Brief at 10. The respondents state, however, that we should follow the decision in *King v. Jeffes*, 630 F.Supp.

F.2d 675 (9th Cir.1984); *Hamlin v. Warren*, 664 F.2d 29 (4th Cir.1981), *cert. denied*, 455 U.S. 911, 102 S.Ct. 1261, 71 L.Ed.2d 451 (1982); *Parkhurst v. State of Wyoming*, 641 F.2d 775 (10th Cir.1981); *Delaney v. Giarrusso*, 633 F.2d 1126 (5th Cir.1981); *Guerro v. Mulhearn*, 498 F.2d 1249 (1st Cir.1974); *Hodgin v. Roth*, 536 F.Supp. 454 (E.D.Pa.1982); *Clark v. Zimmerman*, 394 F.Supp. 1166 (M.D.Pa.1975). We must assume, however, either that there are factors in each of these cases which distinguish them from the instant situation, or that these courts ignored the clear language of the Supreme Court's *Preiser* opinion. *Preiser* guides us to the inescapable conclusion that the district court should not have dismissed the appellant's § 1983 claim simply because it was related to a petition for habeas corpus relief.

### III.

Having determined that the district court improperly dismissed the appellant's § 1983 claim, we only have left to determine whether defendants Riggs and Jeffries are immune from a suit for damages because of their status as Parole Board officials. This court addressed Parole Board officials' immunity from damage suits in *Thompson v. Burke*, 556 F.2d 231, 236–38 (3d Cir.1977). In *Thompson*, the court stated, "No doubt can be entertained that probation officers and Pennsylvania Parole Board members are entitled to quasi-judicial immunity when engaged in adjudicatory duties." *Id.* at 236. The key consideration, then, in determining whether Riggs, a Parole Board official, and Jeffries, a probation officer, are immune from the appellant's suit for damages is whether or not their actions occurred when they were "engaged in adjudicatory duties." [4]

■ Riggs' sole role in the incarceration of the appellant was that he served as the hearing examiner at the appellant's detention proceeding. As such, Riggs was merely charged with the responsibilities of hearing the evidence against the appellant and making a recommendation to the Parole Board. The execution of these duties is plainly an adjudicatory function; therefore, under the holding in *Thompson*, Riggs should be considered immune from a § 1983 suit for damages.

■ The question of Jeffries immunity from suit is far less obvious. Clearly, Jeffries' general responsibilities as the appellant's probation officer were more executive than judicial in nature. In addition, his specific role in this controversy, as the person who charged the appellant with wrongdoing and presented "evidence" to that effect, also appears to be more executive than judicial in nature. Indeed, the *Thompson* court noted:

> The work of a Pennsylvania State Parole Board member certainly includes facets of quasi-judicial duties in affecting the length of sentences, *nonetheless they are not judicial officers. They are in reality executive officers carrying out the policy of the State in respect to probation and parole.*

*Id.* at 237–38 (emphasis added). The *Thompson* court further noted that, in their executive capacity, probation officers are not entitled to absolute immunity from suit, but only to a qualified, good-faith immunity. Hence, in this instance, Jeffries is entitled to immunity from the appellant's § 1983 action for damages if it is shown that his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). As a result, the district court erred in dismissing the appellant's suit before considering evidence that Jeffries had met the *Harlow* standard.

---

400 (E.D.Pa.1985), *aff'd mem.*, 786 F.2d 1147 (3d Cir.1986). Because *Jeffes* was affirmed without a published opinion, it is not precedential in this court.

**4.** Although the appellant amended his complaint and dropped the Pennsylvania Parole Board as a defendant in this suit, it should be noted that any action by the appellant against the Parole Board is barred by the eleventh amendment. *See Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (*per curiam*).

## IV.

 We recognize that there is an overlap in the factual and legal issues inherent in the § 1983 and habeas corpus actions. Premature adjudication of the § 1983 case by a federal court would interfere with congressional policy requiring initial resort to state tribunals in habeas corpus petitions. To accommodate these concerns, it would be proper for the district court to stay Harper's § 1983 action until he has had an opportunity to exhaust all state remedies on his habeas corpus claim. If, after exhaustion, Harper still has not received any relief, his petition for habeas corpus and his § 1983 claim could then be heard together in federal district court.

The judgment appealed from will be reversed in part and remanded to the district court for further proceedings not inconsistent with this opinion.