Ronald **BURBANK**, Plaintiff-Appellant,

v.

John **TWOMEY** et al., Defendants-Appellees.

No. 74–2019.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1975.

Decided Aug. 8, 1975.

John T. Moran, Thomas R. Meites, Kenneth N. Flaxman, Chicago, Ill., for plaintiff-appellant.

William J. Scott, Atty. Gen., Stuart Opdycke, Asst. Atty. Gen., Melbourne A. Noel, Chief-Prisoner Litigation Bureau, Chicago, Ill., for defendants-appellees.

Before SWYGERT, and PELL, Circuit Judges, and GRANT, Senior District Judge.*

PELL, Circuit Judge.

The plaintiff Ronald Burbank, an inmate at the Illinois State Penitentiary, Statesville Branch, brought this action, under 42 U.S.C. § 1983, against certain officials of the prison.[1] The plaintiff, seeking declaratory and injunctive relief, challenged certain procedures employed by the defendants in the imposition of in-prison discipline. The district court granted the defendants' motion to dismiss as to part of the plaintiff's claims and granted the defendants' motion for summary judgment as to the remainder of the claims. The plaintiff appeals.

---

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

1. Jurisdiction was based on 28 U.S.C. § 1343.

The principal issues asserted on appeal are: (1) whether the adoption of a new prison regulation rendered the plaintiff's claim for declaratory and injunctive relief moot; and (2) whether the plaintiff is entitled to an award of attorney fees.

In June 1973, Burbank was charged in an "Inmate Violation Report" with possession of contraband.[2] The prison Disciplinary Committee held a hearing on the charge, at which time Burbank was confronted with the written violation report, informed of the evidence against him, and given the opportunity to make a statement. As a result of the hearing, Burbank was placed in "isolation" for fifteen days.

Pursuant to prison policy at that time, Burbank was not given a written statement of the basis for the Committee's decision until he left "isolation."[3] Moreover, the written statement of reasons which Burbank did eventually receive from the Committee merely stated: "We accept the facts as stated."

In his amended complaint, Burbank charged that the prison procedure with respect to in-prison discipline violated due process in two respects: (1) the statement of reasons for the Committee's decision to impose a sanction is not given to the inmate prior to the imposition of the punishment, and (2) the statement that "we accept the facts as stated" is not a sufficient statement of reasons. As relief, the plaintiff requested that the district judge declare these two procedures to be contrary to due process and grant an injunction ordering the defendants to supply the inmate, prior to the imposition of punishment, with a statement "setting out a reasonably complete factual basis for the imposition of discipline."

In addition, the plaintiff noted, in his amended complaint, that the defendants had alleged in response to Burbank's original complaint (which was superseded by the amended complaint) that the policy of the prison had been changed so that inmates now received a statement of reasons from the Disciplinary Committee prior to the imposition of punishment.[4] The plaintiff's amended complaint alleged that any change in this respect was the "direct and proximate" result of this lawsuit. Asserting that this allegation had never been denied, plaintiff argues that his attorney fees should therefore, be taxed against the defendants.

I

The district court dismissed the "reasons" claims on grounds of mootness. The court found that the prison policy had been changed, since the filing of Burbank's suit, to provide that the Disciplinary Committee tender a statement of reasons for the disciplinary action prior to the imposition of punishment. With respect to Burbank's challenge to the sufficiency of the statement of reasons, the court noted that, subsequent to the

---

**2.** The violation report stated:

"[Burbank] is being reported for:
Having possible marjiuana [sic]. I walked by cell 111 smelling the odor. Then I shook the cell down with Lieutenant Yates and confiscated the possible marjiuana. Inmate Burbank was taken to detention hospital, for further investigation. The possible marjiuana was turned over to Supt. Buldak, to be sent to the crime lab for analysing [sic].
Reported (6–27–73) by A. Roper, for: having a battery powered radio, rewired into a radio wall box, in his cell with earphone attached to it, and pornographic picture."

**3.** Incorporated into the complaint was a letter from defendant Twomey to the plaintiff's attorney which stated, in pertinent part:

"It is the policy of Captain A. Pollman, the Disciplinary Committee Captain, to give his written statement to the resident when he leaves the isolation unit."

**4.** The original complaint, like the amended complaint, challenged the practice of providing a statement of reasons for discipline only after the punishment was satisfied. The amended complaint added the challenge to the sufficiency of the statement of reasons. In addition, the amended complaint added a claim concerning the deprivation of Burbank's privileges without an adequate notice of the hearing on the matter. This latter claim is discussed in Part III, *infra.*

filing of the plaintiff's action, the Supreme Court had issued its decision in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff,* the Supreme Court held that due process required that prison officials furnish a prisoner with just the type of statement which Burbank was seeking.[5] Under these circumstances, the lower court concluded, granting the declaratory and injunctive relief requested by Burbank would be a useless act.

Since the filing of the district court's opinion, the prison officials have adopted a new regulation which provides both: (1) that a statement of reasons be given to the inmate before the imposition of punishment, and (2) that the statement contain an explanation of the evidence relied upon and not merely adopt the wording of the violation report.[6] Since the plaintiff had sought, with respect to these matters, only injunctive and declaratory relief, the plaintiff admitted, in his initial brief before this court, that, even if there had been some question of mootness in the district court, the adoption of this regulation fully and completely mooted the issue.[7] The plaintiff, therefore, focused his appeal in his initial brief chiefly on the matter of attorney fees. (See Part II, *infra.*)

The question of whether the matter had actually been mooted by the adoption of the new regulation was, however, raised by the plaintiff in his reply brief in response to a statement in the defendants' answering brief. In their brief, the defendants had stated, with respect to when (i. e., before or after the imposition of punishment) the statement of reason was to be given to the inmate, that although the Illinois Department of Corrections had adopted a new regulation implementing the change that Burbank had sought, the defendants, nonetheless, considered the old practice to be constitutional. The plaintiff argues that this statement indicates that the prison officials may revert to the old practice and that, therefore, the issue of when the statement must be given is not moot.[8] We disagree.

■ While mere voluntary cessation of allegedly illegal conduct does not moot a case, *United States v. W. T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed.

---

5. The Court in *Wolff* stated:

   "We also hold that there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action. . . . It may be that there will be occasions when personal or institutional safety are so implicated, that the statement may properly exclude certain items of evidence, but in that event the statement should indicate the fact of the omission." 418 U.S. at 564–65, 94 S.Ct. at 2979.

   See *Aikens v. Lash,* 514 F.2d 55, 60 (7th Cir. 1975).

6. The new regulation provides:

   "The resident must be given a written statement, signed by the Chairman, of the evidence relied upon by the majority of the committee and the specific disciplinary action taken, as well as the reasons for disciplinary action. If personal or institutional safety is involved, this statement may properly exclude certain items of evidence, but the statement should then indicate the fact of the omission. The statement of decision should include, wherever appropriate, a short explanation of why information purporting to exonerate the resident was discounted, if it was discounted. It will not be sufficient for the committee's decision to simply adopt and copy the exact wording of the Resident Information Report. The resident's copy of the committee's statement of decision must be given to him either immediately after the hearing or within 10 hours of the decision being made." State of Illinois, Department of Corrections, Administrative Regulation No. 804, Section II–B(9).

7. In his initial brief before this court, the plaintiff stated:

   "During the pendency of this appeal, a revised regulation has been promulgated by the Illinois Department of Corrections, and at the present time 'it is absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur.' *Pacific Maritime Association v. ILWU,* 454 F.2d 262, 263 (9th Cir. 1971)."

8. The plaintiff apparently concedes that his claim concerning the sufficiency of the reasons is still moot.

1303 (1953), a case does cease to be a live controversy if the possibility of recurrence of the challenged conduct is only a "speculative contingency." *Hall v. Beals*, 396 U.S. 45, 49, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969). See *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974).

In the case before us, the plaintiff sought, as explained, only declaratory and injunctive relief with respect to the challenged prison policy. The new regulation, Burbank admits, provides all the relief he requested. See *Knell v. Bensinger*, 489 F.2d 1014 (7th Cir. 1973).

Moreover, we are not here presented with a mere informal promise or assurance on the part of the defendants that the challenged practice will cease. See *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). Nor are we faced with a situation where the order is of brief duration and the plaintiff may well be again confronted with the challenged conduct when the order terminates. See *Rabinowitz v. Board of Junior College District No. 508*, 507 F.2d 1255 (7th Cir. 1974). Rather, the change in policy in the present case has been codified into a formal, published administrative regulation of the Illinois Department of Corrections. The plaintiff does not contend that the Department of Corrections has, in the past, adopted such new regulations when faced with legal challenges and subsequently reverted back to the old procedure when the action was dropped.

■ Under these circumstances, the possibility that the challenged practice will be resurrected is purely a "speculative contingency." Therefore the district court's action in dismissing is correct in view of the mootness of the claim as now established. See *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 92 S.Ct. 1716, 32 L.Ed.2d 317 (1972); *Hall v. Beals, supra; Edwards v. Illinois Department of Corrections*, 514 F.2d 477, 480 n.6 (7th Cir., 1975); *Thomas v. Pate*, 516 F.2d 889, at 891 n.2 (7th Cir., 1975);

*Woody v. Judge*, 435 F.2d 706 (3d Cir. 1970).

Moreover, in light of the formal codification of the new procedure, the defendants' statement that the old practice was valid, being really nothing more than an exercise in righteous self-justification of prior conduct, does not suffice to keep the controversy "alive." *Halvonik v. Regan*, 457 F.2d 311, 313 (9th Cir. 1972). The defendants' statement was made in response to an assertion by the plaintiff that the prison officials had acted in bad faith when they had followed the old procedure of giving the statement of reasons when the inmate finished his punishment. The statement of the defendants concerned only their opinion regarding the validity of the old practice and did not evidence an intention to return to the abandoned procedure.

Our decision that the present issue is moot is not contrary to this court's recent opinions in *Boyd v. Adams*, 513 F.2d 83 (7th Cir. 1975), and *Black v. Brown*, 513 F.2d 652 (7th Cir. 1975). In *Boyd*, the defendants' claim of mootness was based not, as here, on the adoption of a formal, published regulation, but rather on an internal and apparently unpublished "memorandum" which was sent by the Chief of the Criminal Division of the State's Attorney's office to Assistant State's Attorneys. This court, in finding that the issue was not moot, noted that "there can be no assurance that a new State's Attorney or his assistants will not resurrect the old procedure in the future." 513 F.2d at 89. Since in the present case we have a formal codification of the new procedure rather than merely an internal memorandum, we do not consider reversion to the old practice by new prison officials to be a realistic possibility.

In *Black*, as here, the challenged prison policy had been changed through the adoption of new regulations after the plaintiff had filed his action. The plaintiff in *Black*, however, unlike Burbank, sought monetary damages as well as declaratory relief. As this court noted, the

claim in *Black* for monetary relief was clearly not mooted by the adoption of the new regulations. 513 F.2d at 655. See also *Aurora Education Ass'n v. Board of Education,* 490 F.2d 431, 435 (7th Cir. 1973), *cert. denied,* 416 U.S. 985, 94 S.Ct. 2388, 40 L.Ed.2d 762 (1974). The declaratory action also remained a "live" controversy in *Black* in the sense that in order to determine whether the plaintiff was entitled to damages for the defendants' actions under the old procedure, the district court would have to determine the validity of that practice. Since the only relief sought in the present case on this issue is declaratory and injunctive relief, the adoption of the new regulations fully mooted the plaintiff's claims. No purpose can be seen for sending a deceased straw man back to the trial court for last rites.

## II

The plaintiff argues, alternatively, that if the new regulation has mooted his challenge to the practice of supplying the statement of reasons for disciplinary action only after the discipline has been satisfied, then he is entitled to an award of attorney fees since his lawsuit was the cause of the change in this procedure. Burbank relies on the fact that in his amended complaint, he alleged that any change with respect to this particular procedure was the "direct and proximate" result of his legal action. Since the defendants failed to deny this allegation, the plaintiff argues that the allegation must be deemed admitted and, therefore, he should be treated as the prevailing party. We need not, however, decide whether in this situation the plaintiff can be said to have "prevailed," since it is clear that, even assuming *arguendo* that Burbank is the prevailing party, the plaintiff cannot recover attorney fees.

The plaintiff concedes that ordinarily a prevailing party is not entitled to recover attorney fees from the losing party. Burbank contends, however, that an award could be justified in this case under any of three exceptions to the general bar: the "private attorney general" theory, the "common fund" theory, and bad faith on the part of the defendants.

The Supreme Court's recent decision in *Alyeska Pipeline Service v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (43 U.S.L.W. 4561, May 12, 1975), forecloses an award of attorney fees on the "private attorney general" theory where, as in the present case, there is no statutory authorization for such an award. *Townsend v. Edelman,* 518 F.2d 116, at 121 (7th Cir., 1975); *Satoskar v. Indiana Real Estate Commission,* 517 F.2d 696 at 697–698 (7th Cir., 1975).

The Court in *Alyeska Pipeline* also noted that in cases permitting an award on the basis of the "common fund" theory, the class of beneficiaries was always small and easily identifiable. 95 S.Ct. 1612. In the present case, the "class" which was purportedly benefited by this lawsuit is, according to the plaintiff, composed of all Illinois prisoners. This class and the benefit to each member is clearly too indefinite to permit recovery under the "common fund" theory. See *Satoskar, supra.* Moreover, the plaintiff here seeks recovery not from a fund which this lawsuit created but from the defendants. As we recently noted, the rationale of the "common fund" theory is to distribute the costs of litigation among those benefiting from the judgment and not to shift the costs between adverse parties. *Swanson v. American Consumer Industries, Inc.,* 517 F.2d 555 at 560 (7th Cir., 1975), slip op. at 6.

We also conclude that Burbank has failed to justify an award of attorney fees on the basis of bad faith on the part of the defendants. "The standards for bad faith are necessarily stringent." *Satoskar, supra,* 517 F.2d at 698. The old procedure was based on an interpretation of an Illinois statute, which requires that a statement of reasons be given to an inmate when discipline is to be imposed but which does not explicitly indicate when the statement is to be provid-

ed.[9] Even assuming *arguendo* that the defendants' interpretation was unconstitutional, a matter we need not decide in this case, we have found no evidence in the record indicating that the defendants made their interpretation in bad faith. Moreover, we reject the plaintiff's contention that the defendants' interpretation was so illogical as to necessarily have been made in bad faith.

### III

Finally, in his amended complaint, Burbank alleged that as a result of the Disciplinary Committee hearing, he was summoned, without advance notice, to appear before the Merit Staff of the prison. Due to the lack of prior notice, Burbank allegedly was unable to consult with his attorney or present his affirmative defense to the Merit Staff. As a result of the Merit Staff hearing, Burbank was deprived of six months of "good time" and demoted in grade from "B" to "C." The district court granted the defendants' motion for summary judgment on this claim on the ground that any procedural defect in the hearing had been cured by a subsequent hearing afforded to the plaintiff.

The affidavits submitted by the defendants indicated that approximately four months after the Merit Staff hearing, a second hearing was held concerning the plaintiff's demotion in grade. The Inquiry Board's report shows that, at this second hearing, the Board inquired into the merits of the underlying charge which had resulted in the sanctions imposed by the Merit Staff. In addition, Burbank was given an opportunity to present, and did present, an affirmative defense which the Board rejected. The plaintiff presented no affidavits countering the defendants' affidavits. We agree with the district court that although Burbank did not receive adequate advance notice of the time of the Merit Staff hearing, this defect was cured by the holding of a second hearing. The lower court correctly concluded that through the second hearing Burbank had received his relief and, therefore, this claim was also moot.[10] Of course, since it was determined by virtue of the second hearing that plaintiff's change in prison status was proper, any claim for damages, which, in any event, has not been asserted in this appeal, would be obviated.

Accordingly, the judgment of the district court is affirmed.

---

**9.** Ill.Rev.Stat. ch. 38, § 1003–8–7(e)(5) provides:

"If the charge is sustained, the person charged is entitled to a written statement of the decision by the persons determining the disposition of the charge which shall include the basis for the decision and the disciplinary action, if any, to be imposed."

**10.** The plaintiff argues that the defendants' affidavits are deficient in that they do not show that Burbank received adequate advance notice of the time of the second hearing. This contention is purely frivolous. The second hearing was held in response to a grievance filed by Burbank's attorney and occurred about four months after the prior defective hearing. The defendants' affidavits, moreover, indicate that, at the second hearing, Burbank did present the affirmative defense which he was allegedly unable to present at the first hearing due to the lack of notice. Furthermore, the plaintiff at no time has alleged that he did not in fact receive notice of the second hearing.