**Walter H. DYSON, Plaintiff,**

v.

**W.J. KOCIK, et al., Defendants.**

**Civ. A. No. 79–0365.**

United States District Court,
M.D. Pennsylvania.

March 30, 1983.

Richard G. Fishman, Keystone Legal Services, Inc., State College, Pa., for plaintiff.

Gregory R. Neuhauser, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

This court has before it cross-motions for summary judgment, a motion by the defendants for oral argument on the motions for summary judgment, and a motion by the defendants to strike the plaintiff's jury demand. The parties have thoroughly briefed the relevant issues on the summary judgment motions. Oral argument is not necessary.

There is no reason to restate the entire factual and procedural history of this litigation. The complete factual and procedural picture is presented in the comprehensive statement of undisputed facts which was filed with the plaintiff's pretrial memorandum on December 13, 1982.[1]

This matter is a civil action for declaratory, injunctive, compensatory and punitive relief pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. Plaintiff is Walter H. Dyson, an individual who at all material times was incarcerated at the State Correctional Institution at Huntingdon, Pennsylvania (SCI-Huntingdon), serving a sentence for aggravated robbery. At all material times, defendant Lowell D. Hewitt was the Superintendent of SCI-Huntingdon, defendant Charles D. Rodgers was a Correctional Officer IV (Captain of the Guard) at SCI-Huntingdon, and defendant Steven G. Polte was the Director of Education at SCI-Huntingdon.

Plaintiff was on a home furlough from SCI-Huntingdon from June 27, 1978 until June 30, 1978. Due to suspicion that the plaintiff might attempt to bring drugs into the institution upon his return, the plaintiff was placed in the hospital isolation room at SCI-Huntingdon on June 30, 1978, and his bowel movements were checked. On July 1, 1978, while confined at the SCI-Huntingdon hospital, plaintiff passed a red balloon in his bowel movement. Also found in plaintiff's feces was "an unidentifiable substance." As a result of the items allegedly passed in the feces, the plaintiff was charged with misconduct for violating prison rules.

Plaintiff received a copy of the misconduct report on July 3, 1978, at approximately 10:00 a.m. The unidentifiable substance that plaintiff allegedly possessed was tested by SCI-Huntingdon officials sometime between July 1 and July 5, 1978. SCI-Huntingdon officials stated that they believed the test showed a positive result for marijuana. During these proceedings the test used has been determined to have been unreliable under the circumstances of this case.

On July 5, 1978 plaintiff received a misconduct hearing on the July 1 charges. The test results on the unidentifiable substance were presented at the hearing. Prior to the start of the hearing, plaintiff did not receive notice of any test results concerning the alleged unidentifiable substance or that the unidentifiable substance was alleged to be marijuana. At the hearing, plaintiff pled not guilty to the charge but admitted that he had passed the balloon when he defecated on July 1, 1978.

At the conclusion of the hearing, the hearing committee took the following action as recorded on the hearing committee action form of the misconduct report:

"*Action:* (1) D.C.C. Review on July 28, 1978 or at request of B.A.T.

(2) Reduce program level III–A

(3) Confiscate contraband

(4) Revoke pre-release status

*Rationale:* inmate is guilty of misconduct as written."

On July 5, 1978, plaintiff appealed his misconduct conviction to the SCI-Huntingdon Program Review Committee, which consisted of three SCI-Huntingdon staff

---

1. Fact number 25 was amended at the pretrial conference and the following words were added after "unreliable": "in the context in which it was used in this case."

members. The Program Review Committee conducted a formal review of plaintiff's appeal and sustained the hearing committee's action on July 13, 1978. The Program Review Committee reached the following decisions:

Program Review Committee has no problems addressing Dyson's points of appeal, but feels that he already knows the answers to his questions and that the Hearing Committee has already dealt with them. Dyson was detained in the institution hospital under the direction of the Deputy Superintendent for Operations because it was suspected that he was going to introduce drugs into the institution. He was placed in one restraint to keep him from flushing away any evidence that may be revealed in his B.M. This is an authorized practice if an inmate is suspected of introducing contraband drugs. The Hearing Committee does not have to reveal the source of information which led to him being suspected. He was adjudged guilty because the Hearing Committee felt they had reasonable proof to do so. It would seem that it was to the inmate's advantage that the institution chose to handle the misconduct internally as opposed to also bringing in the State Police to press charges. Program Review Committee see [sic] Dyson's appeal as an attempt to rationalize his behavior and project the blame unto [sic] the staff as opposed to facing it himself. Program Review Committee feels he clearly abused the privilege of home furloughs by attempting to introduce drugs into the institution. The Hearing Committee decision is upheld.

On July 14, 1978, defendant Hewitt reviewed the Program Review Committee's action and rationale and he approved it without modification.

Plaintiff was released from disciplinary custody to general population on July 27, 1978, and was paroled from SCI-Huntingdon by the Pennsylvania Board of Probation and Parole on March 1, 1979. He is presently incarcerated at the State Correctional Institution at Camp Hill, Pennsylvania.

The action was commenced by complaint filed March 29, 1979. On July 6, 1979, this court granted plaintiff's motion for leave to file an amended complaint, and the defendants filed their answer to the amended complaint on July 30, 1979.

Following the submission of pretrial memoranda and the holding of a pretrial conference with the court, the parties stipulated to the entry of judgment in favor of defendant Hewitt, with the reservation that such entry would not preclude an appeal therefrom.

The matter was tried to a jury on November 4–6, 1981, and the jury returned its answers to the special verdict questions on November 6, 1981.

By order dated November 10, 1981, the court granted judgment in favor of defendant Hewitt for the reasons stated in the memoranda of December 9, 1980 and July 1, 1981, and in accordance with the stipulation for entry of judgment filed November 2, 1981; granted summary judgment in favor of defendants Rodgers and Polte for the · reasons stated in the memoranda of December 9, 1980 and July 1, 1981; and directed that judgment be entered in favor of defendants Kocik, Adams and Weaverling in accordance with the special verdict rendered by the jury on November 6, 1981.

Plaintiff filed a notice of appeal on December 7, 1981. By opinion and judgment dated October 5, 1982, the United States Court of Appeals for the Third Circuit vacated the judgment of this court insofar as it granted judgment in favor of defendants Hewitt, Rodgers and Polte; affirmed the judgment in all other respects; and remanded the cause for further proceedings consistent with its opinion. *Dyson v. Kocik,* 689 F.2d 466 (3d Cir.1982). The motions presently under consideration are related to the proceedings on remand.

The defendants' summary judgment motion initially raises a qualified or good faith immunity defense. This defense was most recently defined by the United States Supreme Court in *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396

(1982).[2] Justice Powell, writing for the court, said:

> We ... hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* —— U.S. at ——, 102 S.Ct. at 2738.

The plaintiff's response to this alleged defense is that the defendants are barred from asserting the defense by the nature of the remand from the Third Circuit and the law of this case; or alternatively, the defendants have waived the good faith immunity defense by not raising it in the district court or on appeal.

■ This court is, of course, bound by the perimeters of the remand and the previous determinations made in this case except as altered on appeal. *See* 13 Moore's Fed. Practice § 0.404[10], 0.404[1] (1982). The remand focuses on what Judge Teitelbaum[3] characterized as a vagueness related to whether the minimum requirements of due process as defined in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), were met in the misconduct hearing process. *Dyson v. Kocik,* 689 F.2d 466, 468 (3d Cir.1982). The Third Circuit vacated the judgments in favor of Hewitt, Rodgers and Polte. *Id.* The Third Circuit opinion does contain a cryptic statement which indicates that summary disposition may not be appropriate. Chief Judge Teitelbaum wrote:

> It may be that on remand, it will be determined that there are critical conflicting inferences lurking beneath the surface factual harmony which would make these issues appropriate for submission to a factfinder rather than for summary disposition. *Id.*

The language, particularly the use of "may be," indicates that Judge Teitelbaum is hypothesizing about what may occur on remand, not mandating what must occur. This court does not find that the remand precludes motions for summary disposition which make all the "critical conflicting inferences" in favor of the plaintiff.

■ The second argument by the plaintiff is that the defendants have waived their "good faith immunity" defense. The good faith defense is an affirmative defense, *In re Zweibon,* 565 F.2d 742, 746–47 (D.C.Cir.1977) and must be expressly pleaded under Rule 8(c) of the Federal Rules of Civil Procedure.

The defendants have overcome the initial requirement to avoid waiver of an affirmative defense. The answer to the amended complaint filed on July 30, 1979 said:

#### THIRD DEFENSE

Defendants have at all times relevant to the subject matter of plaintiff's complaint acted in good faith, with a reasonable belief in the lawfulness of their actions.

The issue then becomes whether there is some other point at which the defense should have been raised and the failure to do so was a waiver. The plaintiff suggests two such points. First, the defendants did not raise the good faith defense in relation to the motions for summary judgment filed by the parties on or about September 25, 1981. The plaintiff's assertion is that when the September 1981 motions for summary judgment were under consideration, the defendants should have argued that a factual dispute existed as to the subjective good will of the defendants and thus summary judgment was inappropriate on the due process issue. Alternatively, the plaintiff argues that the defendants should have alleged that the test for a good will immunity defense set out in *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) had been satisfied. The *Procunier* test required satisfaction of a subjective

---

**2.** The decision in *Harlow v. Fitzgerald* has been determined to apply retroactively. *Druckenmiller v. U.S.,* 553 F.Supp. 917 (E.D.Pa.1982).

**3.** Judge Teitelbaum is Chief Judge of the United States District Court for the Western District of Pennsylvania and was sitting on this appeal by designation.

and objective prong. The defendants under this theory should have alleged that the facts did not rise to the level of subjective bad faith and that the objective elements had been complied with. The *Procunier* test having been allegedly met, then summary judgment for the defendant would have been appropriate. The plaintiff's second theory is that because the defendants did not raise the good faith immunity defense on appeal to the Court of Appeals for the Third Circuit, the defense is waived.

■ This court cannot agree with either conclusion. A defendant may have available a variety of defenses. The assertion of one defense and not of another is within the discretion of the defendant. It is possible that the assertion of a particular defense will not raise any issue of fact. If the defense is complete, then a motion for summary judgment would be appropriate. The defendant may have available another defense which if asserted would raise issues of credibility. Such a defense would not be an appropriate one for a summary judgment. *See* 10A Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d § 2726. If the defendant asserts one defense on a motion for summary judgment and the motion is denied because a material issue of fact exists, then he can hardly have waived another defense. It is immaterial whether the summary judgment motion is denied at the district court level or the appellate level.

■ A review of the summary judgment motions filed in this case in September or October 1981 reveals that the due process argument revolved around whether the standard announced in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) was complied with. *See* plaintiff's motion for partial summary judgment filed October 31, 1979; brief in support of plaintiff's motion for partial summary judgment filed October 31, 1979; defendants' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure filed September 25, 1981; defendants' brief in support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure filed September

25, 1981; plaintiff's opposition to defendants' motion for summary judgment filed October 9, 1981; brief in support of plaintiff's opposition to defendants' motion for summary judgment filed on October 9, 1981.

Since the summary judgment motions related to the *Wolff* standard, there does not appear to be any reason why the defendants should have asserted the good faith immunity defense. The defendants' statements that no dispute of fact exists are not inconsistent with their present position. The subjective belief of the defendants was not relevant to the *Wolff* standard, but was critical to the good faith immunity. *See Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). A dispute as to the defendants' subjective belief would *not* have been an appropriate subject for summary judgment. *See United States ex. rel. Smith v. Robinson*, 495 F.Supp. 696, 702–03 (E.D.Pa.1980). The conclusion is that the defendants' arguments in the 1981 motions for summary judgment did not act to waive their right to assert the good faith immunity defense in the present circumstances.

■■ The allegation that the defendants did not raise the good faith immunity defense on appeal and therefore waived it also fails. The plaintiff points to the case of *Newark Morning Ledger Co. v. U.S.*, 539 F.2d 929 (3d Cir.1976). The *Newark Ledger* court said:

We generally refuse to consider issues that are raised for the first time on appeal. We are familiar with the position of the Supreme Court that in horrendous cases where a gross miscarriage of justice would occur, the practice should be relaxed. But this is not such a case. Not only did the Government, in pursuing its summary judgment, fail to raise the new theory it now proposes, but it also failed to raise it in defense of the taxpayer's motion for summary judgment. Although the general rule is that cross-motions for summary judgment do not constitute an agreement that if one is rejected the other is warranted, the filing of a

motion for summary judgment does not relieve a party of his responsibility to uphold his burden in opposition to the other party's motion. Had the new theory been raised below, Ledger would have put into issue facts that it asserts would show that the litigation was in fact filed to aid Ledger in the protection of its investment, and not brought for Republican's benefit. Such facts might have precluded summary judgment, but since the questions were not raised in the district court, they cannot be presented or considered on appeal. *Id.* at 932–33 (citations omitted).

The main point of the court in the above quotation is to reassert the rule that appeals courts will not review issues that were not first raised in the lower court. That principle does not seem applicable to the present proceeding which is at the trial level. The latter portion of the quotation relating to summary judgments does not seem to apply to this case. The facts of the present case are that the defendants did raise the good faith defense in their answer to the amended complaint. Thus *Newark Ledger* is distinguishable from the present proceedings.

A more helpful case in ascertaining the approach of the federal courts to problems relating to affirmative defenses is *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Justice White, writing for a unanimous court, said:

> *Res judicata* and collateral estoppel are affirmative defenses that must be pleaded. Fed.Rule Civ.Proc. 8(c). The purpose of such pleading is to give the opposing party notice of the plea of estoppel and a chance to argue, if he can, why the imposition of an estoppel would be inappropriate. Because of *Triplett v. Lowell,* [297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936)], petitioner did not plead estoppel and respondents never had an opportunity to challenge the appropriateness of such a plea on the grounds set forth in Part III–A of this opinion. Therefore, given the partial overruling of *Triplett,* we remand the case. Petitioner should be allowed to amend its pleadings in the District Court to assert a plea of estoppel. Respondents must then be permitted to amend their pleadings, and to supplement the record with any evidence showing why an estoppel should not be imposed in this case. If necessary, petitioner may also supplement the record. In taking this action, we intimate no views on the other issues presented in this case. The judgment of the Court of Appeals is vacated and the cause is remanded to the District Court for further proceedings consistent with this opinion. *Id.* 402 U.S. at 350, 91 S.Ct. at 1453–54.

From the decision in *Blonder-Tongue* it appears that if the law changes while a case is on appeal and the defendant had not plead a defense because of the old law, the plaintiff should be allowed to amend his answer. *Compare, Van Sant v. American Express Co.,* 169 F.2d 355, 372 (3d Cir.1948) (amendment not allowed, but the principle of law involved had not changed.)

In the instant case, the defendants did plead the good faith immunity defense but could not move for a summary judgment because the *Procunier* test had a subjective prong. The law has now been changed by the United States Supreme Court in its decision in *Harlow v. Fitzgerald, supra.* The change in the law makes a summary judgment motion possible. In conformity with the *Blonder-Tongue* analysis, the present plaintiff has been on notice of the good faith immunity defense. The law relating to that defense has been changed in the midst of these proceedings. Since it is not possible to predict how the law will change, the defendants cannot be faulted for their failure to seek a summary judgment on the good faith immunity defense previously.

Having determined that the defendants may raise the good faith immunity defense, the issue now is whether the defendants are immune from damage claims under 42 U.S.C. § 1983. *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) substantially changed the test for

good faith immunity. Prior to *Harlow* an official who wished to establish good faith immunity had to meet an objective and a subjective standard. *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). The decision in *Harlow* removed the subjective standard and now only the objective standard remains. —— U.S. at ——, 102 S.Ct. at 2738–2739.

The new standard applies to this case even though state officials are involved. *Id.* at —— n. 30, 102 S.Ct. at 2738–39 n. 30. The Court goes on to describe how the objective standard is to be applied. The court said:

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors. *Id.* —— U.S. at ——, 102 S.Ct. at 2739 (footnotes omitted).

At the time of the events which are the subject matter of this litigation, the touchstone case involving due process claims was *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The plaintiff's due process claim consists of three parts: (1) that the notice of charges was inadequate; (2) that the hearing committee's rationale and statement of reasons was inadequate; and (3) that finding the plaintiff guilty of the misconduct charge violated notions of fundamental fairness. The *Wolff* standards in controversy are (1) the requirement of prior written notice of misconduct (418 U.S. at 564, 94 S.Ct. at 2978), and (2) a written statement by the factfinders of the evidence relied on. *Id.*

Dyson was provided with a written statement of the charges and the hearing committee filed a written report. Comprehensive statement of undisputed facts filed with plaintiff's pretrial memorandum ¶ 13, ¶ 28. *See* 689 F.2d at 467–68. The issue throughout this litigation has been whether these writings fulfilled the *Wolff* standard.

The Third Circuit focused its inquiry on the "Rationale" given by the hearing committee for the findings it made. The "Rationale" said, "Inmate is guilty of misconduct as written." 689 F.2d at 468. Judge Teitelbaum goes on to say:

> Compared with the standards announced in *Wolff v. McDonnell,* the rationale which supports the findings in this case is so vague that the verdict constitutes a violation of the minimum requirements of due process. Presumably, it is not a crime or "serious misconduct" for a person to have an "unidentifiable substance" in his feces. However, it could be serious misconduct for one to have contraband on his person or in his feces.

> In a case such as this one, it would have been permissible perhaps for the Hearing Committee to conclude that the red balloon was some type of contraband. However, the committee's generalized conclusion that the "Inmate is guilty of misconduct as written" seems to suggest that Dyson was guilty of each offense charged. To make an "unidentifiable substance" found in the feces the foundation for a finding of guilt is arbitrary and a violation of Dyson's due process rights. If the charge had solely been having a "red balloon as contraband," the generalized finding of "guilty of misconduct as written" would have met the minimum requirements of procedural due process. *Id.*

The United States Court of Appeals for the Seventh Circuit has expressed apprehension about conclusory findings which incorporate the violation report and a special investigator's report. *Hayes v. Walker,* 555 F.2d 625 (7th Cir.1977) *cert. denied* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (hereinafter *Hayes I*). Judge Wood, writing for the court, said:

The Institutional Adjustment Committee failed in the present case to give an adequate statement as to evidence relied on or reasons for the action taken. Rather than pointing out the essential facts upon which inferences were based, the Committee merely incorporated the violation report and the special investigator's report. This general finding does not ensure that prison officials will act fairly. Nor will this finding protect against subsequent collateral effects based on misunderstanding of the initial decision. *Id.* at 633.

In reaching this conclusion, the court referred to its decision in *Burbank v. Twomey,* 520 F.2d 744 (7th Cir.1975). In *Burbank* the disciplinary committee stated as its rationale for imposing discipline, "we accept the facts as stated." *Id.* at 746. The information before the disciplinary committee was a violation report and a statement by Burbank. *Id.* The court of appeals found that rationale to be inadequate. 555 F.2d at 633. The Seventh Circuit reaffirmed its decision in *Hayes I* when that case was subsequently before it on appeal. *Hayes v. Thompson,* 637 F.2d 483, 489 (7th Cir.1980) (hereinafter *Hayes II*).

In *Hayes II* the court also had to confront the defense of good faith immunity which was raised in relation to the alleged failure of the fact-finders to provide an adequate rationale for their decision. 637 F.2d at 491–92. The court was, of course, acting prior to the *Harlow* decision and had to apply both a subjective and objective standard. *Id.* at 489. After summarily determining that the committee members did not actually know that what they provided was inadequate, *Id.,* at 491, the court proceeded to analyze the objective standard as follows:

The test is an objective one. We must look at what the Committee gave Hayes and consider whether a prison disciplinary committee could reasonably have concluded that it complied with the requirement of *Wolff.* Here, Hayes was provided with a copy of the transcript of the proceedings and a copy of the violation report (Resident Information Report) as written by Warden Wolff. The transcript stated that the guilty finding was based upon the Warden's violation report and the report of the special investigator. A brief summary of the investigator's findings were included in the report, based on a telephone conversation with the investigator. The Committee also noted that a full report of the investigator was to follow. The investigator's summary appearing in the transcript noted that Hayes called the meeting in the prison yard, that he was a ring leader, and a leader among the black residents. The investigator recommended that Hayes be transferred.

Whether the Committee should have known it violated Hayes' rights is a close question. If the Committee had provided merely the Warden's Resident Information Report as the basis for its finding, it would be clearly erroneous to find that the Committee reasonably believed it was complying with *Wolff,* in light of Regulation No. 804(II)(B)(9). But more was provided here. The transcript which Hayes received covered the entire hearing and included the summary of the investigator's report. It is the presence of this report in particular which tips the scales in our review of the District Court's finding on the immunity issue. If appropriately detailed and supported, and properly considered, such an outside investigative report may well constitute adequate basis for a disciplinary decision. Further, the Committee may have believed that it was incorporating by reference the full written report which was to follow. Although the Committee's statement provided to Hayes, including the transcript's summary of the investigator's conclu-

sions, is constitutionally insufficient under *Wolff*, it does contain conclusions of the investigator upon which the Committee might have reasonably believed, at that time, constituted adequate basis for its decision. Thus, in light of the language of the regulation, and the sparse interpretation of *Wolff* at the time of Hayes' hearing, we cannot say, within the scope of the clearly erroneous standard of review, that the Committee should have known that what it provided violated the *Wolff* requirement. *Id.* at 491–92 (footnotes omitted).

The Illinois administrative regulation referred to by the court read in part as follows:

The resident must be given a written statement . . . of the evidence relied upon by the majority of the committee and the specific disciplinary action taken, as well as the reasons for disciplinary action . . . It will not be sufficient for the committee's decision to simply adopt and copy the exact wording of the Resident Information Report. Administrative Regulation No. 804(II)(B)(9). *Id.* at 492 n. 8.

Dyson, the present plaintiff, was given a copy of the staff person's misconduct report (stipulated facts ¶ 13), apparently a copy of the hearing committee report form (stipulated facts ¶ 28), and a copy of a transcription [4] of his own testimony at the hearing (stipulated facts ¶¶ 22 and 23).

The relevant Pennsylvania procedural rule applicable at the time of the incident was:

6. A written summary of the hearing will be prepared which will include the facts relied upon by the Hearing Committee to reach its decision and the reasons for the decision. A copy of the written summary will be given to the inmate. Institutional Disciplinary and Restricted Housing Procedure, Department of Jus-

tice, Bureau of Correction, III.E.6 (effective date Feb. 12, 1977).

The Pennsylvania procedural rule is clearly not as exacting as the Illinois regulation. The hearing committee can, however, certainly be charged with knowing the standard set out in procedural rule III.E.6.

The procedural rule placed two responsibilities on the hearing committee. First, the committee's written report should include a statement of the facts relied upon in reaching its decision. Second, the report should include the reasons for its decision.

■ The staff member's misconduct report and the transcription of the plaintiff's own testimony seem sufficient to provide the facts. The difficulty arises in terms of whether there is enough information for a reviewing body to determine what rationale the hearing committee used. The Court of Appeals for the Third Circuit appears to have found that the rationale does not meet the minimum requirements of due process. 689 F.2d at 468. The good faith immunity defense goes, however, to what the defendants should have known.

Procedural rule III.E.6 (*supra*, p. 118) requires a statement of the "reasons for the decision." The conclusory statement "Rationale: inmate is guilty of misconduct" does not meet the Commonwealth's own standard.

■ The policy basis for requiring a written statement of the factfinder's reasons is to insure that a prisoner will have a record upon which to base any appeals and as a protection against collateral consequences. 418 U.S. at 565, 94 S.Ct. at 2979. The rationale given by the hearing committee is not adequate as a matter of law. The defendants should have known that what they offered as a rationale was inadequate. Under the objective standard defined in *Harlow v. Fitzgerald, supra,* the defendants are not entitled to summary judgment on

---

4. The transcription is *not* an exact reproduction of what the plaintiff said or a transcript of the entire hearing, but consists in its entirety of the following:

Saturday morning I took a defacation and I felt the balloon come out of my bowel. I took the balloon and set it on the table. During the course of this time, Mr. Adams came in the room and asked me what was in the balloon. I told him nothing.

*See* stipulated facts ¶ 22.

the basis of a good faith immunity defense. The defendants' motion for summary judgment will be denied. Conversely the plaintiff's cross-motion for summary judgment on the good faith immunity defense will be granted.

■ The defendants have moved for summary judgment on the plaintiff's claim that the defendants' actions were arbitrary. This court's task in reviewing a disciplinary decision is to determine whether there exists any basis in fact to support the prison officials' actions. *Jackson v. McLemore,* 523 F.2d 838, 839 (8th Cir.1975). *See Golder v. Fenton,* No. 78–0446 (M.D.Pa. Dec. 29, 1978).

■ The arbitrary action to which plaintiff points is the officials' choice to charge him with "Possession of or introduction of contraband or implements of escape." 37 Pa.Code § 95.102.1(3), BC–ADM 801 (Rev. 2–77). He claims that the charge should have been under "Possession of or use of dangerous or controlled substances." 37 Pa.Code § 95.102.1(19), BC–ADM 801 (Rev. 2–77). The alleged detriment is that by using what the plaintiff asserts is the broader or more general charge the officials were allowed to convict Dyson with less evidence.

This court cannot see how the selection is either arbitrary or had the detrimental effect alleged. Both regulations as applied to the facts of this case would relate to possession of either contraband or of a dangerous or controlled substance. The first regulation mentioned above, 37 Pa.Code § 95.102.-1(3), addresses the "introduction of contraband," the latter addresses the "use of dangerous or controlled substances." 37 Pa. Code § 95.102.1(19). The choice of the regulation which addresses directly "introduction" can hardly be said to have been arbitrary. The suspicion which started this whole process was the allegation that Dyson might attempt to introduce drugs into the prison.

The plaintiff argues that the use of the first regulation, the one relating to introduction, "would allow a de facto conviction for possession of drugs without the Institution having to present any proof the individual in fact possessed such." Brief in support of plaintiff's opposition to defendants' motion for summary judgment and in support for his cross-motion for summary judgment at 18. The facts of this case belie that interpretation of the regulation. The regulation cannot be more narrowly drawn, because it must cover instances where prisoners attempt to introduce contraband by means which do not involve personally possessing the item. The defendants' motion for summary judgment as it relates to an arbitrary selection of regulations to enforcement will be granted.

■ The plaintiff also argues that the action taken by the hearing committee was arbitrary. To be arbitrary in that context the officials' decision would have to be without any basis in fact. 523 F.2d at 839.

The hearing committee had before it a copy of the staff person's misconduct report, the plaintiff's testimony and the positive result of the Nicoban Jr. test of the substance found in Dyson's feces. During these proceedings the Nicoban Jr. test has been determined to be unreliable in the context of this case. *Dyson v. Kocik,* No. 79–0365, page 3 (M.D.Pa. Jul. 1, 1981).

The United States Court of Appeals for the Eighth Circuit in *Willis v. Ciccone,* 506 F.2d 1011 (8th Cir.1974) said:

One of the requirements of *Wolff* is that the prisoner be given a written statement of the factfinder's reasons for the disciplinary action. *Where procedural due process has been afforded* in the prison proceeding, this statement will provide prison officials with documentary proof demonstrating the factual basis of any action by the prison disciplinary board. A result can be reached at the pleading stage. As we have noted previously, the role of the district court is not to afford a de novo review of the disciplinary board's factual findings. The district court should simply determine whether the decision was supported by some facts. *Id.* at 1018 (emphasis added).

■ The difficulty in applying the *Willis* analysis to this case is that it is the essence of the dispute as to whether procedural due process has been afforded to Dyson. It is the assumed existence of a fair record that allowed the Court of Appeals for the Eighth Circuit to determine that the decision was supported by some facts. The procedure used by the officials in the instant case, especially the vague rationale, makes it impossible for this court to summarily determine whether the decision was based on the facts before the hearing committee or was arbitrary. *See Helms v. Hewitt,* 655 F.2d 487, 502 (3d Cir.1981) reversed on other grounds, —— U.S. ——, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). There is a factual dispute as to what rationale the hearing committee used. It is not possible to determine as a matter of law that the decision was or was not arbitrary. Conversely, the plaintiff's motion for summary judgment as it relates to the arbitrariness of the hearing committee's decision will be denied. The defendants' motion for summary judgment as it relates to the arbitrariness of the hearing committee's decision will be denied.

Defendant Hewitt has moved for what appears to be dismissal for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Since the parties have submitted materials in addition to the complaint, this court will treat the motion as one for summary judgment. Fed.R. Civ.P. 56. The United States Court of Appeals for the Third Circuit has rejected the theory of *respondeat superior* in actions under § 1983. *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1082 (3d Cir. 1976). The Third Circuit requires acquiescence or participation in the violation before liability attaches under § 1983. *See Rizzo v. Goode,* 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976). The issue in this case thus becomes whether Hewitt's review of the Program Review Committee's action constituted sufficient acquiescence or participation in the violations of the plaintiff's civil rights.

■ The underlying violations involved would be the failure to provide procedural due process and possibly substantive due process at the hearing committee level. Defendant Hewitt reviewed the Program Review Committee's report. As a part of that review it must be assumed that he had before him the complete record developed up to that point. A review of that record should have been made in light of the procedural rules and the law as it was understood at the time. In this circuit knowledge of and acquiescence in the acts which violate the plaintiff's right can satisfy the requirement of personal involvement. *United States ex rel. Smith v. Robinson,* 495 F.Supp. 696, 698 (E.D.Pa.1980).

■ The Chief Judge of this district in the case of *Hooker v. Arnold,* 454 F.Supp. 527 (M.D.Pa.1978) said:

A Warden of a prison is clearly responsible for the implementation of a prison policy notwithstanding the fact that subordinates are directed to carry the policy out. Under the circumstances here, defendant cannot be granted summary judgment on the ground that he lacked personal involvement in any deprivation. *Id.* at 529.

In *Hooker* the warden's involvement consisted of

the responsibility "to determine appropriate housing for all persons ... based on various factors including the status of the individual and security concerns presented by each individual"; (2) that his authority was often delegated to subordinates who made individual determinations based on institutional policy; and (3) that the policy of the institution was that "pretrial inmates," and, it appears from other portions of the affidavit, presentence inmates as well, "would normally be housed in detention status as Marshal's holdovers." *Id.* (footnote omitted).

The present case shows greater involvement than in *Hooker.* Hewitt knew directly of Dyson's hearing and punishment. He was required by regulation to review the proceedings. Procedural Rule III.H.7. These facts are sufficient to satisfy the

personal involvement requirement of *Rizzo v. Goode,* 423 U.S. at 377, 96 S.Ct. at 607. Defendant Hewitt's motion for summary judgment will be denied.

The defendants have moved to strike the plaintiff's jury demand. The motion and the plaintiff's acquiescence in that motion are dependent on the summary judgment motions determining all the issues for which damage judgments might be given. Since the summary judgment decisions have not determined those issues, the defendants' motion will be denied.